THE CONSOLIDATED COAL COMPANY OF ST. LOUIS, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (FIRMINO CASTRALE, Defendant in Error.)

*Opinion filed February 18, 1926.*

WORKMEN'S COMPENSATION—*what necessary to justify award for permanent partial incapacity.* Before an award for permanent partial incapacity is justified the claimant must show that the injury received by him will be reasonably certain to leave him permanently partially incapacitated from pursuing his usual and customary line of employment and thereby be reasonably certain to permanently prevent his earning as much as he would have earned had he not been injured.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

EDGAR P. HOLLY, (WHITNEL & BROWNING, of counsel,) for plaintiff in error.

A. W. KERR, and GEORGE R. STONE, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

On September 29, 1922, an explosion of gas occurred in the mine of the plaintiff in error, located at Johnston City, Williamson county. Firmino Castrale, a digger of coal, who was working close to the place of explosion, sustained injuries by reason thereof. He filed his claim with the Industrial Commission for compensation under the Workmen's Compensation act on account of such injuries. His claim was for injuries to the head, face, stomach and left side. The arbitrator who heard the matter awarded Castrale 10-6/7 weeks' compensation for temporary total disability and five weeks for disfigurement of the face. Castrale filed his petition for review, and upon hearing before the Industrial Commission he was awarded compensation for

10-6/7 weeks' temporary total disability and $16 per week for 254 weeks and one week at $12.29 for permanent partial incapacity. Upon review the circuit court entered a judgment confirming in all respects the decision of the Industrial Commission. This record is now before us for review upon writ of error.

It is contended by the plaintiff in error that the award of the commission, and the judgment of the circuit court confirming the same, are not supported by the evidence.

The evidence shows that Castrale was quite severely injured by the accident and that he was taken to a hospital at Murphysboro, where he remained fifteen days under a doctor's care. At the hearing before the arbitrator on December 5, 1923, Castrale, after testifying to the injuries he had received and the medical treatment thereof, testified he was not then able to do any work, and that the reason that he couldn't work was because he could not stoop down on account of his back and side; that his back and side were not getting any better; that it was always the same since the injury; that he had been treated by two doctors at Johnston City other than the one who attended him while he was in the hospital and that he had gone to St. Louis to see a doctor; that when he works he is not able to load the turn; that he loads two or two and a half tons of coal; that before he got hurt he could load twenty or twenty-two tons a day; that sometimes he feels a little bit dizzy, but not often; that the trouble with his stomach was that he could not eat because he could not digest; that he never sleeps over two hours and a half a day and night; that he does not sleep during the day; that he eats only about one-fifth of what he used to eat; that his back does not hurt. At the hearing on review on June 12, 1924, he testified that since the hearing before the arbitrator he had worked about one day a week; that the mine only works about one day a week; that he goes down about every day the mine is open and working; that he works about the same as he

did before the hearing; that he has the same trouble that he had before along the left side and stomach, and testified to about the same ailments as before the arbitrator, including his ability to only sleep a couple of hours a night. He introduced no other evidence to corroborate his statements as to his physical condition.

The doctor who treated Castrale in the hospital testified to the treatment given him. He said that he was brought to the hospital on a stretcher and was in considerable shock. He was coughing and spitting some blood. His face, body and limbs had a great many scratches, abrasions and erosions of the skin, all of which were rather superficial but were filled with coal dust and dirt; that the skin over both elbows and hips was excoriated; that there was a cut an inch long over the right eye, filled with coal dirt; that his chest was filled with moist rales, due to bronchitis, produced by the gas and smoke from the explosion; that the wounds were all cleaned out, the coal dust removed and iodine applied, ointment dressings placed upon him and antitoxin given as a preventive against tetanus; that he improved rather rapidly and was out of bed in about a week; that he left the hospital in fifteen days from the time he entered; that the bronchitis was pretty well cleared up and the wounds were all pretty well healed; that when he left the hospital the symptoms of bronchitis had practically gone; that all the wounds of his body had healed, leaving no deep scars excepting over the right eye, where there is a black mark from the coal dust, about an inch long; that when he left the hospital he was complaining of some stiffness in his right side and back and also of some soreness over his body; that he saw him next December 14, when he walked into witness' office; that the objective signs he found at that time were numerous scars over the back and elbows, one scar over the right eye, with a thin line of coal-black at the margin of the scar, which was only superficial and would gradually disappear; that at the time of the ex-

amination the chest was normal; that at that time witness could see no disability and found none; that he could see no reason from the bruises which he found why Castrale should have the pain that he complained of at that time in the left side, running down through and below the groin; that from the examination he made and the treatments which he gave he could find no basis for disability.

Another doctor testified that he made an examination of Castrale on September 18, 1923; that he had him stripped; that his general appearance and color were those of good health; that he stood slightly stooped, gait slow, otherwise normal; that his weight was 161 pounds, temperature 98, pulse 80, respiration 24, blood pressure slightly below normal for a man of his age; that the pulse was normal, and his weight corresponded to that of a man of his height and age; that the reflexes were equal and active throughout; that he found the right posterior cervical glands were enlarged, the other gland-finding negative; that the enlarged gland, in his opinion, was not in any way connected with the injuries, as that was usually due to some infection; that the tonsils were clean and the heart, lung and abdominal-findings negative; that there was a small varicocele; that in the region complained of in his back he had full and active motion; that there were no bony abnormalities or muscle spasms in that region; that there was no evidence of hip joint arthritis or sciatica; that there was full passive motion of both hip joints; that there were numerous small coal-mark scars over the posterior surface of the body, arms and face, the more pronounced scar on the face being about one and one-half inches long, in the region of the right eyebrow; that these findings, with the exception of the testicle and the scars, were all normal; that the X-ray of the anterior posterior view of the lumbo-sacral region shows a deviation of the lower sacrum to the left and possible sacralization of the transverse processes of the fifth lumbar vertebra; that these were congenital; that this deviation

would have no effect; that you would get a strain in that region a little easier than you would in a normal back; that there was no evidence of a strain of the back; that from the examination which he made, in his opinion, there was no disability; that it was his opinion that if the man was eating only one-fifth of what he formerly did he would lose weight.

These witnesses are not impeached in any way, and they testified to the physical facts upon which they based their opinion. While Castrale testified that he had been examined by three other physicians they were not called as witnesses. While the evidence in the case shows that Castrale received a severe injury, there is a decided conflict in the evidence as to whether or not he was fully recovered and able to work at the time of the hearing before the commission. We do not deem it necessary, however, to pass upon that question as there is no evidence in the record to show that his partial incapacity, if existing, is reasonably certain to be permanent. Before an award for permanent partial incapacity is justified, the claimant must show, among other things, that the injury received by him will be reasonably certain to leave him permanently partially incapacitated from pursuing his usual and customary line of employment and thereby be reasonably certain to permanently prevent his earning as much as he would have earned had he not been injured. *Groveland Coal Co.* v. *Industrial Com.* 308 Ill. 499, and 309 id. 73; *Jewell Coal Co.* v. *Industrial Com.* 316 id. 156.

The judgment of the circuit court will be reversed and the cause remanded, with directions to set aside the award and remand the cause to the Industrial Commission for further hearing.

*Reversed and remanded, with directions.*