THE GUEST COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOSEPH RECK, Defendant in Error.)

*Opinion filed February 16, 1927.*

1. WORKMEN'S COMPENSATION—*when an award for temporary total incapacity is not justified.* The period of temporary total incapacity, within the meaning of the Compensation act, is that temporary period immediately after the accident during which the injured employee is totally incapacitated for work by reason of the illness attending the injury; and an award for such total incapacity of more than a year is not justified, where the evidence shows that during said period the employee worked for several weeks at different jobs, including carpenter work.

2. SAME—*what necessary to justify award for permanent partial incapacity.* An award under paragraph (*d*) of section 8 of the Compensation act for permanent partial incapacity must be based on evidence, the same as any other award under the act, and before such an award is justified the claimant must show, among other things, that the injury received by him will be reasonably certain to leave him permanently partially incapacitated from pursuing his usual and customary line of employment, and thereby be reasonably certain to permanently prevent his earning as much as he would have earned had he not been injured.

3. SAME—*burden is on claimant to prove all facts necessary to justify award.* For a claimant to recover compensation he must prove, by a preponderance of the competent evidence, all facts necessary to justify an award, as liability under the act cannot rest upon speculation or conjecture but must be based upon facts established by a preponderance of the evidence.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. LOUIS BERNREUTER, Judge, presiding.

GEORGE C. BLISS, for plaintiff in error.

W. J. MACDONALD, (A. W. KERR, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was allowed by this court for the purpose of reviewing a judgment of the circuit court of St. Clair county which confirmed an award of the Industrial Commission.

Joseph Reck filed with the Industrial Commission an application for the adjustment of his claim for compensation, which he charged arose out of an accidental injury received by him on January 7, 1924, while employed as a loader in the mine of the Guest Coal Company. There appears to have been a partial hearing before an arbitrator on September 4, 1924, and a final hearing before a second arbitrator on May 12, 1925. A stipulation was entered into between the parties prior to the hearing, whereby the only questions involved were the nature and extent of the injury and the amount of compensation due, if any. After the hearing the arbitrator awarded Reck $16 per week for 58-3/7 weeks, that being the period of temporary total incapacity for work, and the further sum of $9.82 per week for 10 weeks, under paragraph (*d*) of section 8 of the Workmen's Compensation act, because the injury had caused the employee to become partially incapacitated from pursuing his usual line of employment. The arbitrator also

found the sum of $715.44 had been paid on account of the alleged injury. The employee caused the decision of the arbitrator to be reviewed by the Industrial Commission during September, 1925. The commission, after hearing very little additional evidence, ordered the employer to pay compensation to Reck at the rate of $16 per week for 58-3/7 weeks, the period of temporary total incapacity for work, and thereafter the further sum of $7.11 per week for 357-4/7 weeks for permanent partial incapacity from pursuing his usual and customary employment, as provided by paragraph (*d*) of section 8 of the act. The cause was taken by *certiorari* to the circuit court of St. Clair county, where the award made by the commission was confirmed. Upon the coal company's petition a writ of error has been allowed.

The proof presented at the hearings before the arbitrator was substantially as follows: Joseph Reck, who was twenty-nine years old, had been working for the Guest Coal Company about a year and had worked every day the mine operated. He and his buddy were loading coal in the mine and had to push a loaded coal car out so as to get an empty one in place to load. While they were pushing the loaded car out and were going over a switch the car jumped off the track. Reck and his buddy tried to lift the loaded car back on the track, and just as they had the weight Reck's right foot slipped and something snapped right in the small of his back. He could not lift any more. His back felt like it was broken and he could hardly stand up. Later he came out of the mine and went home. Next morning he went back to the mine and told them he was going to a doctor. He went to Dr. Duey, who strapped him up and gave him electrical treatments. After going to Dr. Duey about every other day for six or seven weeks he was sent to St. Mary's Hospital, at East St. Louis, where Dr. Siegal and Dr. McQuillan took X-ray pictures and made an examination about March 28, 1924. Reck then went home

and during that summer did "little odds and ends," and also worked for his father-in-law, putting up a filling station. The work he did was chiefly all kinds of carpenter work and assisting in fitting and cutting the pipes. He was engaged in this employment about five weeks. Thereafter he went to Collinsville to be examined by Dr. Siegal and Dr. Bellinger. This was about October 15, 1924. Those doctors recommended that he have his tonsils taken out, his nose operated on, his appendix removed and his teeth fixed up. During December he had two bad teeth taken out, but all the work on his teeth was not finished at the time of the hearing. At the time of the medical examination at Collinsville in October, 1924, he was working at the carbon works, running an electric hoist and received $3.15 for nine hours' work. His engagement there lasted about five weeks. He worked at the carbon works until about the time the operations on his tonsils and nose were to be performed and quit that work because of these operations. He stated that to a certain extent the main reason he had not worked any more was because he could not get the work. His tonsils were removed by Dr. Short about January 12, 1925, and he had an operation on his nose about February 4, 1925. After his tonsils were removed he did little things around home, getting his garden ready, trimming grapes, and other odd jobs, and later in the summer he worked at a dentist's. He also did caddying at a country club for four or five weeks prior to the hearing in May, 1925. He stated that after his tonsils were taken out, his nose worked on and his teeth fixed up there had been no change in the condition of his back; that when he stooped over and worked for fifteen or twenty minutes his back became sore and he could not do anything for four or five days until it healed up again. He stated he could lift nothing heavy. He further testified that he worked at the B. B. coal mine for three years before his employment with plaintiff in error, and while at work in

the B. B. mine during February, 1922, he received an injury to his back, slightly above the present injury and on the opposite side. He was off eleven weeks and received compensation on account of that injury, but had never had any further trouble with his back from that injury.

Dr. Siegal testified that he made a specialty of industrial surgery. He examined Reck at St. Mary's Hospital during March, 1924, at which time X-ray pictures were taken under the doctor's direction. He again examined the claimant in October, 1924, at which time he complained of pain in the lower back, which pain was dull at times and became aggravated on exertion. He told the doctor about receiving an injury to his back in February, 1922, when he was employed by the B. B. Coal Company. The X-ray plates showed a decided bony production between the fourth and fifth lumbar and between the fifth lumbar and the sacrum. The bony production was very suggestive of an old fracture which had healed and showed the fracture was of long standing. The doctor's conclusion was that Reck was suffering from hyperthropic arthritis. The doctor found sources of infection in the nose, tonsils and appendix, which were active at the time. Reck had pronounced pyorrhea, with some abscess formations on some of his teeth. The doctor recommended the clearing up of these several sources of focal infection in order to bring about a recovery of the patient. The doctor was of opinion that the sources of infection found by him might cause the arthritis present and the arthritis cause the pain in the back. An examination of Reck was made about a week before the hearing, which was after the operations performed upon his nose and throat and after some work had been done upon his teeth, and in the doctor's opinion Reck seemed to bend and move more freely than before, although he still complained of pain. There was a decided improvement since the removal of the foci of infection. The doctor testified that the patient would continue to improve.

Dr. Short, a specialist in ear, nose and throat cases, testified that he examined Reck on November 17, 1924, at the request of Dr. Siegal. The examination showed a condition of flu, chronic tonsilitis and deviated nasal septum. The patient said he had his nose broken some years ago and was unable to breathe through his nose at times. The doctor treated him for the flu, removed his tonsils about January 13, 1925, and performed an operation on his nose about February 4, 1925. The tonsils were full of pus and the nose secreted pus, both causing focal infection. He continued to treat Reck until February 23, 1925. He did not know anything about the condition of Reck's back.

At the time of the hearing on review before the Industrial Commission during September, 1925, Reck stated that he had not returned to any steady employment since his injury; that when he stooped it seemed like there was something in his back that wanted to break; that he had awful pains when he stooped over. He further stated that when standing up he could do almost anything but could not stoop over. He was not taking any treatment at that time. He stated that since the hearing in May he had earned between $9 and $11 a week; that he could cut grass and take care of shrubbery and do a little garden work but that he could not use a shovel or a spade.

Dr. Stiehl testified before the commission in behalf of the claimant and stated that he had examined him on that morning and found a slight enlargement of the muscles of the lumbar region on the left side. When asked as to whether or not such a condition would be disabling so far as heavy work was concerned and as to whether or not it would be permanent, the doctor replied that he could not say that it would be permanent, though it might be. He thought the condition would continue for a long time.

Plaintiff in error contends the award should be set aside because (1) there is no competent evidence to support the finding that Reck was temporarily totally incapacitated for

324—18

work for 58-3/7 weeks; (2) there is no evidence to support the finding that as a result of the injury Reck was permanently partially incapacitated from pursuing his usual employment; (3) the decision of the Industrial Commission, and its confirmation by the circuit court, are manifestly against the weight of the evidence.

We have set out herein the substance of the testimony of all the witnesses appearing before the arbitrator or commission, and it will be seen from the evidence of the claimant that he was not temporarily totally incapacitated for work for a period of 58-3/7 weeks. The alleged injury was received January 7, 1924. . Reck helped his father-in-law put up a filling station prior to September 4, 1924, and performed carpenter work about five or six weeks. During October, 1924, and thereafter, he worked for five or six weeks at the carbon works and quit there in order to have his tonsil and nose operations performed. The period of temporary total incapacity is that temporary period immediately after the accident during which the injured employee is totally incapacitated for work by reason of the illness attending the injury. It may be described as the period of the healing process. (*Mt. Olive Coal Co.* v. *Industrial Com.* 295 Ill. 429.) There is no evidence in the record to justify the finding that the period of temporary total incapacity was 58-3/7 weeks.

The applicant's testimony appearing in the record tends to show he received an injury on January 7, 1924, after which he was treated for six or eight weeks by Dr. Duey. Thereafter he was examined by other doctors, and upon their suggestion he had his tonsils removed, his nose operated upon and part of the work done upon his teeth for the purpose of removing what the doctors termed focal infection, which was perhaps the cause of at least a part of the trouble in his back. Dr. Duey did not testify though he treated applicant for some six or eight weeks after the injury. The record shows no treatment of Reck's back in-

jury after that time, and he stated he was taking no treatment at the time of the review before the commission but that his back still caused him pain when he stooped over. There was no medical testimony offered by the applicant to show the nature and extent of the injury to his back. The record contains no evidence either on the part of the applicant himself or of any expert physician that the alleged injury to Reck's back is of a permanent nature. Dr. Siegal said Reck had improved and would continue to improve, and Dr. Stiehl, who testified for Reck, stated he could not say the condition he found would be permanent. An award under paragraph (*d*) of section 8 of the act must be based on evidence, as well as under any other section of the Workmen's Compensation act. (*Groveland Coal Co.* v. *Industrial Com.* 308 Ill. 499.) For a claimant to recover compensation he must prove, by a preponderance of the competent evidence, all the facts necessary to justify an award. Liability under the act cannot rest upon speculation or conjecture, but must be based upon facts established by a preponderance of the evidence. (*St. Louis and O'Fallon Coal Co.* v. *Industrial Com.* 321 Ill. 117.) Before an award for permanent partial incapacity is justified, the claimant must show, among other things, that the injury received by him will be reasonably certain to leave him permanently partially incapacitated from pursuing his usual and customary line of employment, and thereby be reasonably certain to permanently prevent his earning as much as he would have earned had he not been injured. *Consolidated Coal Co.* v. *Industrial Com.* 320 Ill. 166.

The judgment will be reversed and the cause remanded, with directions to the circuit court to remand the cause to the Industrial Commission for a further hearing on any competent testimony offered by either party.

*Reversed and remanded, with directions.*