(No. 2912—)

Louis C. Chiara, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed October 13, 1938.*

Joseph W. Koucky, for claimant.

Otto Kerner, Attorney General; Glenn A. Trevor, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

On July 20th, 1935, and for some time prior thereto, the claimant was employed by respondent as an attendant at Chicago State Hospital, Chicago, Illinois. On the last mentioned date, while on night duty and while waking one of the patients, about 5:45 A. M., claimant was assaulted by such patient, who grabbed him by the neck and threw him lengthwise across the rail of the bed in such manner that his head and shoulders were on the bed, his back was across the rail, and his feet were off the floor. The patient then dragged claimant on the floor, got on top of him, broke his glasses, and started to scratch his face before he could be removed.

Claimant reported the accident to his supervisor, but continued with his work and completed his work for the night at 6:30 A. M. He reported for work again that night, and continued to perform his duties regularly until October 22d, although he claims that he had pain all the time. About four weeks after the accident, the pain got so bad that he consulted Dr. Rooney, one of the doctors at the institution, who treated him therefor. There was no improvement in his condition and on October 22d, 1935 he was placed in the institution hospital where he continued to be treated by Dr. Rooney and by Dr. Meany, both of the institution, until November 15th, 1935. He then felt that his condition was not improving, and, after asking if he could get a release and go to another hospital, went to see Dr. Levinthal at Michael Reese Hospital. He remained at Michael Reese Hospital ten days and was then taken home. While at Michael Reese Hospital he was placed in a cast, and remained in such cast for eight weeks. He was off duty from October 22d, 1935 to January 14th, 1936, when he returned to his regular work as an attendant. Since January 14th, 1936 he has worked regularly as an attendant, although he claims he still has pains through the small of his back and down both legs, and was still taking treatment at the time he testified on July 23d, 1936. Since January 14th, 1936 he has received his regular salary, but for the period from October 22d, 1935 to January 14th, 1936 he received only two weeks' wages.

The medical testimony consists of the testimony of Dr. N. H. Adams who was called on behalf of the claimant, and

Dr. George E. Rooney, one of the regular physicians at Chicago State Hospital, who was called on behalf of respondent.

It appears that the claimant suffered from an involvement of the sciatic nerve some years prior to the time of the accident in question, but he claims that he had entirely recovered therefrom, and Dr. Rooney stated that he had seen claimant many times before the accident, walking about the grounds in normal fashion. Both doctors agree that there is a stiffness of the lower part of the back, and a limitation of motion in both legs, and from all of the testimony in the record, we are of the opinion that the injuries claimant received on July 20th, 1935 either caused a neuritis of the sciatic nerve, or lighted up the pre-existing sciatic condition, and produced the condition of which he now complains.

The evidence sufficiently shows that the respondent, in the conduct and management of Chicago State Hospital, is engaged in a hazardous occupation, within the meaning of those words as used in Section Three (3) of the Workmen's Compensation Act of this State, and it is not seriously contended that claimant and respondent were not operating under the Act at the time of the accident in question.

The evidence also shows that notice of the accident was given and claim for compensation made within the time required by the Act.

Claimant was thirty-three (33) years of age at the time of the accident and had two (2) children under the age of sixteen (16) years. His wages were Fifty Dollars ($50.00) per month, plus maintenance estimated at Twenty-four Dollars ($24.00).

The respondent contends:

1. That the claimant failed to prove by competent evidence that there were or had been objective symptoms or conditions not within the physical or mental control of the employee himself, and that therefore, under the provisions of Section 8, paragraph i-3 of the Compensation Act, claimant is not entitled to compensation:

Said Section 8, paragraph i-3 reads as follows:

*"Provided, further,* that all compensation payments named and provided for in paragraphs (b), (c), (d), (e) and (f) of this section, shall mean and be defined to be for injuries and only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."

Respondent seems to take the position that objective symptoms include only those which can be seen, or ascertained by touch. The same contention was made in the case of *Van Vleet* vs. *N. Y. Public Service Co.*, 111 Neb. 51; 195 N. W. 456. In that case, in considering such question, the court said:

"Defendant's idea is that by objective symptoms are meant symptoms of an injury which can be seen or ascertained by touch. We are of the opinion that the expression has a wider meaning, and that symptoms of pain, and anguish, such as weakness, pallor, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute."

This question was considered by our Supreme Court in the case of *Powers Storage Co.* vs. *Ind. Com.*, 340 Ill. 498. In that case the court, on page 509, said:

"It is true that the injury was to the brain and the injury was not shown by an examination of the brain, but such an injury has a characteristic result, which was present in this case. *This result was an objective symptom proving the injury.* The second point under this head is that the symptoms shown by Ballauer were within his physical or mental control. This contention is based upon the fact that the motor function of the left side, and not the sensory functions, were affected, and it is contended that the appearance of paralysis could be stimulated. The paralysis in this case extended to the entire side, including the face, and is an objective symptom, though it might be possible for an exceptional individual to stimulate. There is no evidence in this case that it may be simulated or that tends to show simulation by the defendant in error."

The opinion of the court in the last mentioned case was approved in the case of *Plano Foundry Co.* vs. *Ind. Com.*, 356 Ill. 186.

In this connection it must be borne in mind that the respondent's witness, Dr. Rooney, was the treating physician; that therefore he was competent to testify as to the statements made to him by the claimant during treatment relating to his disability; that Dr. Rooney testified, among other things, as follows: that prior to the accident in question he had seen claimant many a time, walking around the grounds in normal fashion; that claimant is now partially disabled, and his condition is permanent; that the first time he examined claimant, the latter "had an inability of complete extending the leg" and "complained of severe pain when I went over the muscles and sciatic nerve on the right"; that claimant was then suffering terrific pain; that he was then unable to walk at all, and had to be carried; that there has been con-

siderable improvement in claimant's condition, otherwise he would not be able to walk at all; that if claimant had a pre-disposition to sciatic involvement, it would be very easy for such condition to flare up as the result of the fall he sustained; and that in his opinion, claimant was not malingering.

It is well settled in this State that when an accidental injury, which arises out of and in the course of the employ-ment, aggravates a pre-existing disease, or causes it to flare up, so that disability results, the employer is liable for such disability. Angerstein's "Workmen's Compensation Act", section 52; *Peoria Terminal Co.* vs. *Ind. Bd.*, 279 Ill. 352; *Rockford Hotel Co.* vs. *Ind. Com.*, 300 Ill. 87; *Carson Payson Co.* vs. *Ind. Com.*, 340 Ill. 632; *Ervin* vs. *Ind. Com.*, 364 Ill. 62.

From a consideration of all of the evidence in the record, we are of the opinion that the results to the claimant were characteristic of the injury, and constituted objective symp-toms proving such injury, and that therefore this contention of the respondent is untenable.

2. The respondent also contends that if claimant is en-titled to an award, he is not entitled to any compensation for temporary total disability.

Claimant was injured on July 20th, 1935 and continued to work regularly thereafter until October 22d, 1935. In con-sidering the question of what constitutes temporary total in-capacity, our Supreme Court, in the case of *Mt. Olive Coal Co.* vs. *Ind. Com.*, 295 Ill. 429, said:

"The period of temporary total incapacity is that temporary period im-mediately after the accident during which the injured employee is totally incapacitated for work by reason of the illness attending the injury. It might be described as the period of the healing process. Temporary as distin-guished from permanent disability is a condition that exists until 'the in-jured workman is as far restored as the permanent character of the injuries will permit."

The holding of the court in the last mentioned case has been approved in numerous cases since that time. *Stromberg* vs. *Ind. Com.*, 305 Ill. 619; *Consolidated Coal Co. etc.* vs. *Ind. Com.*, 311 Ill. 61; *Guest Coal Co.* vs. *Ind. Com.*, 324 Ill. 268; *Western Cartridge Co.* vs. *Ind. Com.*, 357 Ill. 29.

In the last mentioned case the Industrial Commission found that the employee had been temporarily totally dis-abled for a period of seven weeks, and that he then returned to work for a period of six weeks, at which time he again

became temporarily incapacitated for work, and that such incapacity lasted for 54-2/7 weeks, and thereupon entered an award for 61-2/7 weeks temporary incapacity. The Circuit Court approved the finding of the Industrial Commission in this respect, but the Supreme Court held that the Circuit Court was in error, and held that if the employee had any disability after his return to work, it must be classified either as partial or total permanent disability and not as temporary.

Under the holdings of our Supreme Court in the cases above cited, we are of the opinion that the claimant in this case is not entitled to compensation for temporary total incapacity.

3. In his complaint the claimant sets forth that he sustained injuries to his spine and right leg, and the respondent takes the position that he is not entitled to recover for any disability which he may have sustained to his left leg, on account of the fact that no claim was made therefor in the complaint.

A similar question was raised in the case of *Consolidated Coal Co.* vs. *Ind. Com.*, 322 Ill. 510, and in disposing of the same, the court, on page 517, said:

"An application for the adjustment of a claim for compensation is in the nature of a pleading and should be consistent with the findings of the commission in making the award. * * * It is not, however, a formal pleading and need not state all the elements of a cause of action, as is required in a declaration in an action at law. The application is sufficient if it states the nature of the accident and the character of the injury to such an extent that it fairly advises the employer of the nature of the claim and enables him to ascertain the facts and to prepare his defense. * * * The application was sufficient to allow the introduction of evidence showing the actual disability caused by the accident and to sustain an award to the extent justified by the evidence."

The contention of the respondent in this behalf is not well taken.

4. Respondent objects to the item of $200.00 which claimant seeks to recover as the reasonable value of medical and hospital services rendered to him.

Section 8, paragraph A of the Workmen's Compensation Act provides that "the employer shall provide the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited, however, to that which is reasonably required to cure or relieve from the effects of the injury. The employee may elect

to secure his own physician, surgeon and hospital services at his own expense.''

The record as to the medical and hospital services furnished to claimant, other than the services furnished by respondent, is very unsatisfactory.

The State furnished all medical and hospital services from October 22d to November 15th, 1935, and on the last mentioned date, claimant went to Michael Reese Hospital and placed himself under the care of Dr. Levinthal. The only testimony in the record as to why claimant went to another hospital and secured another physician, is the following:

A) In his direct examination claimant stated (page 4):

"After 3½ weeks they couldn't do anything for me so I asked Dr. Rooney if I could get release and go to another hospital. I went to Michael Reese Hospital."

B) Dr. Rooney in his direct examination (page 4) said:

"He (claimant) showed little or no improvement while he was here, and for that reason was a little upset and he left to seek his own family physician, Dr. Levinthal."

There is nothing in the record to indicate what reply, if any, Dr. Rooney made to claimant's inquiry above set forth, nor is there anything to indicate that he was not receiving proper treatment. So far as the record discloses, the State was willing and able at all times to furnish the necessary medical and hospital services. There is nothing to indicate that the claimant was authorized by any duly authorized officer or agent of the respondent to go to another hospital, or to obtain other medical services at the expense of the State.

Considering all of the evidence in the record, we feel that the selection of Dr. Levinthal and Michael Reese Hospital was made by claimant upon his own responsibility, and without any authority on the part of the respondent, and inasmuch as claimant elected to secure such services without authority from the respondent, he must be held to have done so at his own expense.

The testimony of the medical witnesses both for the claimant and for the respondent shows that the claimant has a permanent disability of both legs and that the same resulted either directly from the injury he sustained on July 20th, 1935, or indirectly as a result of the aggravation of a pre-existing condition which was latent at the time of such injury.

Dr. Rooney's last examination of the claimant was at the time of the hearing on November 1st, 1937. His conclusions at that time were substantially as follows:

Right leg: Limitation of abduction, 50 to 55%. Limitation of flexion, 25%;—or 40% loss of the use of the whole leg.

Left leg: Limitation of flexion, 15%; or 10 to 15% loss of the use of the whole leg.

Upon consideration of all of the evidence, we find that the claimant sustained a permanent loss of 33-1/3% of the use of the right leg, and a permanent loss of 10% of the use of the left leg, and under the provisions of Section 8-e-15 of the Compensation Act, is entitled to compensation for 82-1/3 weeks at $12.00 per week, to wit, Nine Hundred Eighty-eight Dollars ($988.00), all of which compensation has accrued at the present time.

Award is therefore entered in favor of the claimant for the sum of Nine Hundred Eighty-eight Dollars ($988.00).

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof", approved July 3d, 1937 (Session Laws 1937, p. 83) and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the general fund in the manner provided for in such Act.