CAMERON, JOYCE & Co., Plaintiff in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(SARAH L. CARROLL, De-
fendant in Error.)

*Opinion filed February 16, 1927.*

1. WORKMEN'S COMPENSATION—*when finding that injury con-
tributed to an employee's death is justified by evidence.* Where an
employee of a road construction company dies of valvular heart
trouble within five months after his left arm and foot had been
crushed under the wheels of a heavy road-grader, a finding that
the injury contributed to the employee's death is warranted where
the evidence shows that although the employee had chronic heart
trouble he had always been able to work up to the time of his in-
jury, and that although he made satisfactory recovery from the
local injuries to his arm and foot he continued to suffer pains in
his chest, back and side, which constantly increased in severity.

2. SAME—*coroner's verdict is not admissible.* The provision of
section 18 of the Coroners act, as amended in 1919, that the coro-
ner's verdict is not admissible as evidence to prove any fact in
controversy in a suit for damages arising out of injuries caused
by negligence, applies to proceedings under the Compensation act.

WRIT OF ERROR to the Circuit Court of Hancock county;
the Hon. GEORGE C. HILLYER, Judge, presiding.

PLANTZ & LAMET, for plaintiff in error.

CLYDE P. JOHNSON, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

On October 23, 1924, Charles Carroll, while in the em-
ploy of Cameron, Joyce & Co. driving a road-grader weigh-
ing 7600 pounds, in the construction of a hard road near
Carthage, Illinois, fell from the grader and was run over
by one of its wheels. His left arm and left foot were
crushed and mutilated and the bones broken. He was
taken to the St. Joseph's Hospital, at Keokuk, Iowa, where
he received medical and surgical attention from Dr. Armen-

324—32

trout, of Keokuk, and Dr. Pumphrey, of Carthage. He remained at the hospital eighteen days and then returned to his home in Carthage. He was afterward taken to the hospital for an examination, and it was found that the wounds were healed and the bones had made a good recovery. He died on March 28, 1925. An application for compensation was made to the Industrial Commission on behalf of his widow and children and an award was made by an arbitrator in their favor, which, upon petition for review, was sustained by the commission. The circuit court of Hancock county confirmed the award upon a writ of *certiorari,* and upon application of the employer a writ of error was allowed to review this decision.

The question presented for our determination is whether the injury sustained contributed to the death. The deceased never returned to work and was not able to do any work after the injury. The evidence shows that he remained at home and constantly suffered pain, which increased in the last few days. He complained of his side hurting him and his left shoulder and of pains in his chest and back. Dr. Pumphrey treated him, and his wife gave him her constant care under the direction of the physician, who left chloroform and alcohol for him, with directions to bathe his side and his shoulder. Mustard poultices were put on his side, and he was bathed with alcohol, chloroform and liniment. This treatment continued until his death. Three physicians testified as to his injury and its effect. Dr. Pumphrey stated that in his judgment he died from chronic valvular disease of the heart, which possibly was aggravated by the injury he had received. He could not state the extent of the aggravation, but probably the injury contributed to his death to the extent that it lowered his vitality. He said that Carroll was asthmatic, anæmic and not a strong and robust man, and that, of course, the terrible injury would contribute to his death to the extent that it lowered his vitality. While he could not

say that if it had not been for the injury the probabilities were that he would not have died at the time he did, in his judgment the injury did contribute to his death. He further testified that, aside from the fact that Carroll was suffering from asthma and heart trouble, he had made a good recovery from his injuries. The doctor had prescribed for him twelve or fifteen years before the injury, for cardiac asthma. He visited Carroll about six hours before his death and found him in a very critical condition, suffering from chronic valvular lesions of the heart. He had a dilatation of the heart, which was probably caused by years of suffering from asthma. The valvular trouble would not, in all probability, develop suddenly. The dilatation could come on very suddenly.

It appeared from the evidence that prior to the injury Carroll had worked in 1923 and 1924 at general farm work, making hay, chopping wood, making posts, building fence, and doing whatever there was to do on the farm. He did the work of an ordinary farmhand and did as good a day's work as any man, working every day that it was fit to work.

Dr. Armentrout testified to his examination and treatment of Carroll at the hospital. He made an examination, and found that the patient had some valvular heart trouble but did not find any injuries to his chest or any other injuries except those to his left arm and foot. When Carroll returned to the hospital for the purpose of observation to ascertain the result of the surgical work, Dr. Armentrout took an additional X-ray picture and found the injury was healing very well and the bones in good condition, that the arm was doing as well as it could for its condition at the time of the accident, and the fractures of the bones of the foot were healed. This was the testimony before the arbitrator.

On review before the commission Dr. Anthony B. Day, a physician of St. Louis, who had never seen the deceased,

testified as an expert in regard to his opinion, based upon hypothetical questions, that the injury was not a contributing cause of the death. He testified that where such an injury as had been received, and where the patient had for ten or twelve years prior been suffering from chronic valvular heart disease, cardiac asthma might affect his condition, but the effect would take place immediately or within a short time after the injury and would aggravate the heart condition that had existed before the injury. Assuming that the condition existed at the time of the injury, that the bones were set and the patient rested for a period of three or four months, the rest would tend to benefit the heart condition, and assuming that a few weeks prior to his death the patient had been dismissed by a competent physician as cured, in so far as the same was possible, and that from the time of the injury to the time of dismissal he had not worked but had rested, at that late time the injury would not be manifest in the heart condition. The shock would not then be in evidence and the rest would tend to benefit the heart condition, and the chronic valvular heart disease would be helped, rather than aggravated, at that time. In answer to the question, assuming that the deceased was injured on October 23, 1924, in the manner in which the evidence shows he was injured, that he received skilled medical treatment and was discharged as cured, so far as medical aid could cure, some weeks prior to March 28, 1925, and that he died on the latter date of what the attending physician termed chronic valvular disease of the heart, whether the injury referred to did contribute in any manner, in the doctor's opinion, to that death, he answered that it was possible that the injury might have contributed to that death, but in this case it was his opinion that it was not a contributing cause of the death; that the period in which the injury would have contributed to the death had passed. On cross-examination Dr. Day testified that all he knew about the case was what he had seen in the record

and what had been stated to him on the trial; that if the deceased had never made complaint about any chest or lung trouble and had not had asthma for years nor consulted any doctor for a number of years, and if he had died within eighteen days while at the hospital, he would say that the injury had contributed to his death.   Assuming that he was able to work for a number of years prior to his injury, that the bones and muscles in his shoulder were torn loose and his foot crushed, that he had never complained with reference to his chest or back before the injury and then complained from the time of the injury to his death, the pains becoming more severe until his death, that his physician who took him to the hospital and operated on him treated him from that time until his death and nearly every week gave him medicine for internal injuries and gave him outside applications for the pain, the doctor stated that he would not say, on this state of facts, that the injury did not contribute to his death.   In other words, if the man complained of those injuries to his chest and back regardless of the condition of the wounds, and had never complained of those injuries or of the pain before the accident, he would say that the injury contributed to his death.   If the man had not had heart disease for years, had not made any complaint with reference to asthma and since the injury asthma had not developed, he would not say that asthma contributed to his death or the results therefrom.   If the deceased suffered pain under his left shoulder and the back of his neck, and it was necessary to give applications of alcohol, chloroform and mustard plasters and things of that sort, and if that condition continued only from the time of the accident to his death and became more pronounced, then he would not say that the injury did not contribute to the death.

The question in this case is wholly one of fact.   The facts with relation to the injury which were the subject of observation and proof, the treatment given and its effect

were testified to by Dr. Armentrout, Dr. Pumphrey and Mrs. Carroll. Mrs. Carroll, Tom Bruce and Vince Stotlar testified as to the physical condition of the deceased, his general condition of health and his ability to work during the two years prior to the accident. Dr. Armentrout further testified that he found some valvular heart trouble when he examined Carroll at the hospital to find the condition of his heart prior to the administration of the anæsthetic for the operation upon him. Dr. Pumphrey, who had treated the deceased for twelve or fifteen years before the accident, testified that he was suffering from asthma and heart trouble, but for which he would have made a good recovery from his injuries, and that in his judgment the injuries contributed to his death. Dr. Day, who had never seen the deceased, was of the opinion that the injury was not a contributing cause of his death, but in answer to hypothetical questions based upon the history of the case, the pains suffered by the deceased and the continuation of them from the time of his injury to his death, the fact that he had not complained of asthma or of pains in his chest or back before the injury, the treatment directed by the physician and given by the wife, he stated that he would not say, on the state of facts assumed, that the injury did not contribute to the death.

It appears from all the evidence that the deceased was afflicted with heart trouble some years before the accident but that it did not interfere with his ability to work as a teamster and farmhand and that the injury was of such a character as was likely to produce an aggravation of the heart disease. Though he recovered from the local injuries to his arm and foot he continued to suffer pains in his chest, back and side, which constantly increased in severity and during the last few days of his life were of an excruciating character, and he died of valvular disease of the heart. These are the facts from which the physicians drew the conclusions expressed,—one that the injury did

contribute to the death, and the other that it did not. There was no substantial contradiction in the testimony as to the physical facts, and there is no substantial contradiction in the testimony of the doctors that the injury received was of a character likely to aggravate the disease with which the injured man was affected. The difference of opinion arose only out of the length of time between the accident and the death. The condition of the man grew constantly worse, though he recovered from the local injuries, until his death, five months after the accident. From a consideration of all the evidence it was not an unreasonable conclusion that the accident increased the disease from which the injured man was suffering and thus finally caused his death. The conclusion of the arbitrator and of the commission was justified by the evidence.

There is no question of law in the record. An inquest was held and the coroner's verdict was received in evidence without objection. Later, at the close of all the evidence, the plaintiff in error's attorney objected to the coroner's report as improper and incompetent evidence, but no ruling was made on the objection. The coroner's verdict was clearly incompetent. Section 18 of the Coroners act was amended in 1919 by the addition of a proviso, "that in any suit or proceeding hereafter commenced for the recovery of damages arising from or growing out of injuries caused by the negligence of any person, firm or corporation resulting in the death of any person or for the collection of a policy of insurance, neither the coroner's verdict returned upon the inquisition as provided herein, nor a copy thereof, shall be admissible as evidence to prove or establish any of the facts in controversy in said civil suit or proceeding." (Laws of 1919, p. 293.) This act does not specifically mention proceedings for the adjustment of compensation under the Workmen's Compensation act, but in *Spiegel's House Furnishing Co.* v. *Industrial Com.* 288 Ill. 422, it

was specifically held that a coroner's verdict was not admissible in such a case, and the contrary holding in *United States Life Ins. Co.* v. *Vocke,* 129 Ill. 557, and in cases following it, was overruled.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*