(No. 2685—

STELLA A. THIEDOR, EXECUTRIX, ESTATE OF EMILY HILLIER, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 14, 1939.*

ARTHUR H. SHAY, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

On March 1st, 1934 Emily Hillier entered the service of the respondent as an attendant at the Elgin State Hospital, Elgin, Illinois, and continued to perform the duties of an attendant at that institution until October 26th, 1934. On the last mentioned date, she was instructed by the nurse in charge of Burr Cottage to take one Ruth Alpert, an inmate of the institution, to the dental office which was about three blocks away. Said Ruth Alpert had been an inmate of the institution for some time, was then about thirty-three years of age, and was about five feet, nine or ten inches tall. She was strong and vigorous and very stubborn and resistive; was difficult to handle, and was known as a runaway patient. Ordinarily, resistive and runaway patients were sent to the dental office by bus, but on the day in question, no bus was provided, and Emily Hillier walked to such office with the patient. On the way back to the cottage the patient was very resistive. She stamped on the attendant's feet, kicked her in the legs, attempted to get away, and resisted strenuously all the way from the dentist's office back to the cottage. The nearer she got to the cottage, the worse she behaved, and the attendant had to hold her arms and push and drag her back to the cottage. As she approached the cottage, Mrs. Hillier felt herself getting weak, and she collapsed and became unconscious just after she got inside the doorway.

She was immediately placed in an ambulance and taken to the General Hospital on the institution grounds, where she remained until December 4th, 1934. After she left the hospital she stayed with her son in Elgin for about a week, and

then returned to her daughter's home in Streator, where she continued to live up to the time of the hearing herein.

She claimed that she was totally and permanently disabled as the result of injuries sustained on October 26th, 1934 as aforesaid, and on June 17th, 1935 she filed her complaint in this court. On June 19th, 1938, while her claim was still pending in this court, she died. On October 13th, 1938 her death was suggested of record, and pursuant to leave of court, Stella A. Thiedor, as Executrix of the Last Will and Testament of Emily Hillier, deceased, was substituted for the decedent as plaintiff in this cause.

The Attorney General raises the following questions, to-wit:

1. Were the employer and the employee operating under the provisions of the Workmen's Compensation Act at the time of the occurrence on October 26th, 1934?

2. Did Mrs. Hillier sustain an accidental injury?

3. If so, did the same arise out of and in the course of her employment?

## I.

Were the Employer and the Employee Operating Under the Provisions of the Workmen's Compensation Act?

It appears from the evidence in the record that the grounds of the Elgin State Hospital, including the Farm Colony, comprise about 900 acres; the exact number of buildings thereon is not disclosed by the evidence, but reference is made therein to the Main Building which has four stories, basement and attic; also an electric lighting plant; a general hospital; a machine shop; and a number of cottages, including Burr Cottage, Salster Cottage, Hogan Cottage, and Holden Cottage. The electric light plant is of the size ordinarily used in cities of 10,000 to 15,000 population. There is an electrically operated laundry; a machine shop with a lathe and mill, which machine shop contains sharp-edged cutting tools and instruments.

From the foregoing statement, there can be no question but what the respondent, in the operation of the Elgin State Hospital, is engaged in an enterprise or business, within the meaning of those words as used in the Compensation Act, and as defined by our Supreme Court. *Uphoff* vs. *Industrial Board*, 271 Ill. 312; *Hahnemann Hospital* vs. *Ind. Com.*, 282 Ill. 316; *Board of Education* vs. *Ind. Com.*, 301 Ill. 611.

The claimant contends that the enterprise in which the respondent was engaged, is an enterprise in which statutory or municipal ordinance regulations were then imposed for the regulating, guarding, use, or the placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein; also that such enterprise is an enterprise in which sharp-edged cutting tools or implements are used;—and that by virtue of Section Three (3) of the Workmen's Compensation Act, the provisions of such Act apply automatically to the employer and the employee therein.

The Attorney General contends that municipal ordinance regulations have no application to State institutions and buildings, and that statutory regulations have no application to the State unless they are specifically made to apply to it.

The facts in the record, however, disclose that the machine shop on the hospital grounds contains sharp-edged cutting tools, and consequently the enterprise in question is directly within the provisions of Paragraph 7½ of Section Three (3) of the Compensation Act, and therefore the claimant's intestate and the respondent were automatically bound by the provisions of the Compensation Act. It therefore becomes unnecessary to consider the question raised by the Attorney General as to the application of the provisions of Paragraph Eight (8) of Section Three (3) of the Compensation Act relative to statutory or municipal ordinance regulations.

## II and III.

Did the Claimant's Intestate Sustain an Accidental Injury; and If So, Did the Same Arise Out of and in the Course of Her Employment?

The record shows that Mrs. Hillier was sixty (60) years of age at the time she entered the employment of the respondent; that she worked continuously from the time she entered such employment on March 1st, 1934 until October 26th, 1934, except for three days when she was in the hospital on account of a cold, and two or three days when she was laid up on account of vaccination, and that the time she so lost was afterwards made up by her.

Dr. George L. Wilson, who was the family physician of the claimant's intestate, testified that he examined her in the fall of 1933; that she then had diabetes millitis, a light case;

that she had an increased blood pressure, sometimes 185, sometimes 200; that there was nothing in her blood pressure that would interfere with the performance of ordinary labor; that she had a slight heart murmur; that the heart muscle was well compensated, and that there was nothing in any of such conditions which would interfere with the performance of ordinary labor on her part; that he also examined her on the last of January, 1934, and her condition was about the same as at the time of the previous examination.

Claimant, was also examined at the institution when she reported for work on March 1st, 1934. Her examination at that time showed a heart lesion, high blood pressure, and some diabetes. Notwithstanding that fact, she was accepted for work and continued to perform her duties regularly and satisfactorily until October 26th, 1934 except for the few days that she was in the hospital as hereinbefore set forth.

After her release from the hospital subsequent to the occurrence of October 26th, 1934, claimant's diabetes was worse and she began taking insulin, which she had not taken prior to that time;—she also complained very much of anginal pains.

Dr. Wilson also testified that Mrs. Hillier's condition at the time of the hearing was such that she could not perform ordinary labor, and that she would never be able to do such work; that in his opinion her then condition could result from her struggle with the patient; that such struggle would have a tendency to increase the diabetic condition and increase and aggravate the heart condition; also that there was nothing in Mrs. Hillier's history or physical condition to explain her condition at the time of the hearing except the occurrence of October 26th, 1934.

Dr. Wiltrakis, Senior Physician of the institution, who was in charge of the acute medical and surgical service, testified that he had charge of claimant during the time she was in the hospital from October 26th, to December 4, 1934; that in consultation with Dr. Gabby of Elgin, a diagnosis of coronary thrombosis was established; that in his opinion a violent struggle by a person in whom pre-disposing causes then existed, would aggravate and bring on coronary thrombosis.

It appears from the medical testimony that thrombosis may result from an injury, or it may result from disease.

However, if it is due to a trauma, it is of swift onset, whereas if it is due to disease, it is of slow onset.

It is well settled in this State that where there is a pre-existing disease or condition, if such disease or condition is aggravated or accelerated under circumstances which can be said to be accidental, and disability results, such disability is the result of an accidental injury. *C. & A. R. R. Co.* vs. *Ind. Com.*, 310 Ill. 502; *Hahn* vs. *Ind. Com.*, 337 Ill. 59; *Cameron Joyce & Co.* vs. *Ind. Com.*, 324 Ill. 497; *Simpson Co.* vs. *Ind. Com.*, 337 Ill. 454.

Considering the physical condition of Mrs. Hillier prior to the occurrence of October 26th, 1934, and her condition subsequent to that time, in connection with the medical testimony in the case, there can be no question but what the occurrence of October 26th aggravated the diabetic and coronary conditions which had previously existed, and produced the condition which existed at the time of the hearing; also that her condition at the time of the hearing was such that she could not perform ordinary labor, and would never thereafter be able to do so. We conclude, therefore, that claimant's intestate sustained an accidental injury within the meaning of those words as used in the Compensation Act.

The question as to the construction of the words "arising out of and in the course of the employment," has been before our Supreme Court in numerous cases, and the meaning of such words has been quite definitely determined.

The rule as to when an accidental injury may be said to arise "out of" the employment is stated in the case of *Mueller Construction Co.* vs. *Ind. Board*, 283 Ill. 148, as follows:

"An injury may be said to arise out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment, but it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after

the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

The rule there announced has been consistently followed by the Supreme Court. *Vincennes Bridge Co.* vs. *Industrial Commission,* 351 Ill. 444; *Mazursky* vs. *Ind. Com.,* 364 Ill. 445; *Scholl* vs. *Ind. Com.,* 366 Ill. 588.

The rule as to when an accidental injury may be said to arise "in the course" of the employment is stated by our Supreme Court in the case of *Atlantic & Pacific Tea Co.* vs. *Ind. Com.,* 347 Ill. 596, as follows:

"An injury occurs in the course of the employment, within the meaning of the Workmen's Compensation Act, when it takes place within the period of the employment, at a place where the employee has the right to be, and while he is engaged in performing the duties of the employment or something incidental to it."

Such rule has been followed in numerous cases since decided. *Landon* vs. *Ind. Com.,* 341 Ill. 51; *Mt. Olive Coal Co.* vs. *Ind. Com.,* 355 Ill. 222; *Wabash Ry. Co.* vs. *Ind. Com.,* 360 Ill. 92.

Mrs. Hillier's injuries were sustained by her while she was in the performance of her ordinary duties, and by applying the rules above set forth, we reach the conclusion that Mrs. Hillier's disability arose out of and in the course of her employment, within the meaning of those words as used in the Compensation Act, and that she was completely disabled from the time of such injury on October 26th, 1934 until the date of her death on June 19th, 1938.

The record does not disclose whether her death resulted from the injuries she sustained on October 26th, 1934 or from other causes.

Notice of the accident was given to the respondent, and claim for compensation on account thereof was duly made within the time required by the Compensation Act.

Mrs. Hillier's annual earnings, computed in accordance with the provisions of Section 10 of the Compensation Act, were Eight Hundred Forty-nine Dollars and Sixty Cents ($849.60), and her average weekly wage was Sixteen Dollars and Thirty-four Cents ($16.34).

Claimant's intestate was totally disabled from the time of her injury on October 26th, 1934 until the date of her death on June 19th, 1938, and the claimant is therefore entitled to an award for One Hundred Ninety and one-seventh (190-1/7)

weeks' compensation at Eight Dollars and Seventeen Cents ($8.17) per week, to wit, Fifteen Hundred Fifty-three Dollars and Forty-seven Cents ($1,553.47), payable in accordance with the provisions of the Workmen's Compensation Act.

The total amount of such compensation has accrued at this date, and award is therefore entered in favor of the claimant for Fifteen Hundrtd Fifty-three Dollars and Forty-seven Cents ($1,553.47).

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," (Illinois Revised Statutes 1939, State Bar Association Edition, Chapter 127, Pars. 180-181), and being subject also to the terms of an Act entitled "An Act Making Appropriations to the Auditor of Public Accounts for the Disbursements of Certain Moneys Until the Expiration of the First Fiscal Quarter After the Adjournment of the Next Regular Session of the General Assembly," approved July 1st 1939 (Session Laws 1939, page 117);— and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Fund in the manner provided by the foregoing Acts.