(No. 41203.—

PROCTOR COMMUNITY HOSPITAL, Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Katherine Oakley, Appellant.)

*Opinion filed January 29, 1969.*

Swain, Johnson & Gard, of Peoria, (Jerry T. Stafford, of counsel,) for appellant.

Cassidy, Cassidy, Quinn & Lindholm, of Peoria, (John E. Cassidy, Jr., of counsel,) for appellee.

Mr. Justice Ward delivered the opinion of the court:

Katherine Oakley, the claimant, appeals to this court from a reversal by the circuit court of Peoria County of a decision of the Industrial Commission which sustained an award of compensation to her by an arbitrator arising from the death of her husband, Orvis Oakley. The question appearing is whether a causal relationship was sufficiently established between an accidental injury Oakley suffered in his employment and his death some six months later.

On December 11, 1962, the claimant's husband, then 62 years old, had been employed by the appellee Proctor Community Hospital since February, 1961, as the night operator of its boiler plant. His duties included the operation and maintenance of the hospital's boilers and the making of minor boiler repairs. Oakley had suffered from a generalized arteriosclerotic heart condition with cardiac decompensation for several years prior to December 11, 1962. Because of this condition he had been hospitalized on four occasions beginning in July, 1960, including a three-day hospitalization in August, 1962, and one of eight days in September, 1962. On December 11th in his employment at the hospital,

Oakley dropped a three-pound wrench on the fourth toe of his left foot. The claimant testified that when her husband returned from work he was limping, and his left foot was badly bruised and swollen in the area of the toes. He, however, continued working without interruption for the next few weeks but did wear a house slipper on the injured foot. Mrs. Oakley testified that during this period his foot remained bruised and swollen.

Oakley was again hospitalized on December 29, 1962, and though discharged on January 23, 1963, was never able to return to his work. The diagnosis made at that time by Oakley's physician, Dr. Glenn Allen, as shown by the hospital's records, was "arteriosclerotic heart disease with cardiac decompensation." The hospital records also noted a "contusion with skin abrasion of the left 4th toe", and disclosed that a heat canopy was used to treat Oakley's left foot for two weeks and that the decedent complained of pain in his left foot even after the discontinuance of this heat therapy. According to testimony given by the claimant and her daughter-in-law, Mary Oakley, when the heat treatment was discontinued the foot was swollen, red and peeling and a whitish substance oozed from it.

On February 23, 1963, the decedent visited a Dr. Richard McCallen who testified in the claimant's behalf that Oakley then had stated that his left foot had become red and blue and infected and that complaint was made by him of swelling and pain in the first and fourth toes of the foot. Dr. McCallen testified further that his examination of the foot disclosed a secretion of infectious material at the fourth toe and a discoloration of the two toes. He prescribed medication for the infection and never again treated the claimant's husband.

Oakley became a patient of Dr. Ward Eastman on March 28, 1963. Dr. Eastman testified that his examination of Oakley on that date disclosed an impending gangrenous condition of the fourth and great toe of Oakley's left foot as

well as a cardiac problem. He was hospitalized in an effort to avert a gangrenous condition. However, it became necessary on April 8 to amputate Oakley's left fourth toe and to debride the left great toe. A left sympathectomy to modify the caliber of the left leg blood vessels and provide better leg circulation was also performed. Until his release from the hospital on May 11, 1963, the hospital records show that the decedent's complaints of pain in the left foot persisted.

Within a month of Oakley's discharge from the hospital his condition worsened and the claimant testified that Dr. Dubord, who had removed the toe, but who did not testify, stated upon examining her husband that he would have to be re-hospitalized and that his left leg would have to be amputated. Dr. Eastman testified that upon Oakley's re-admission on June 7, 1963, he examined him and found, in addition to general evidence of circulatory failure, that there was a progression of gangrene in the left foot. Oakley developed progressive heart failure and on June 10, 1963 he died. The pathologist's summary in the report of autopsy stated in part: "Myocardial insufficiency in a previously damaged heart with severe compromise of the coronary blood supply appears to be the primary cause of death."

Dr. Raymond Zwicker, a pathologist, testified for the claimant. He had not examined the decedent but responding to hypothetical questions testified that in his opinion the described injury at work on December 11, 1962, could have been, and he believed it to have been, a factor accelerating Oakley's cardiac failure and demise on June 10, 1963. As a basis for his opinion, the witness in part referred to the intense pain that typically accompanies impending gangrene, the disturbance of rest and stress as factors which would or could accelerate congestive cardiac failure from an incipient heart condition.

The medical witness presented by the appellee was Dr. Ward Eastman, who had treated the claimant's husband. His opinion was that he did not believe there was a causal

connection between the trauma involved in the decedent's accident at work in December, 1962, and his death in June, 1963. His testimony was that trauma in the case of a person with the decedent's arteriosclerotic condition can precipitate the onset of gangrene but that such trauma "contributed to the death of the toe, but certainly not the death of the man."

The claimant argues that the Commission's finding of the requisite causal connection between trauma and death was not against the manifest weight of the evidence and that the circuit court's reversal was erroneous. The appellee maintains that the only inference that can be drawn from the record and which would be medically supportable is that Oakley died solely from the normal progression of heart disease. It contends that there is no substantial medical evidence in the record from which the Commission could reasonably infer a causal relationship between Oakley's death and the injury to his toe six months earlier and that, considering the medical record here, Dr. Zwicker's opinion cannot be given credence.

It is fundamental that it is primarily the function of the Industrial Commission to resolve disputed questions of fact, including those of causal connection, to draw permissible inferences and to decide which of conflicting medical views is to be accepted. (*Precision Connecting Rod Service* v. *Industrial Com.,* 40 Ill.2d 277, 279 and cases cited there.) We recently declared that "The concern of a court of review in Industrial Commission cases such as these is not to determine medical questions, on which, it appears, men of learning in that field disagree, but rather to pass on the legal question presented, *viz.,* are the findings of the Industrial Commission contrary to the manifest weight of the evidence before it." (*Precision Connecting Rod Service* v. *Industrial Com.,* 40 Ill.2d 277, 281.) Thus, unless the findings of the Industrial Commission are manifestly against the weight of the evidence they will not be disturbed on review and this without regard to how this

court might or would have decided the case had it been the trier of the facts. *Gould National Batteries, Inc.* v. *Industrial Com.*, 34 Ill.2d 151, 158; *Mechanics Universal Joint Div., Borg-Warner Corp.* v. *Industrial Com.*, 21 Ill.2d 535, 538.

In *Republic Steel Corp.* v. *Industrial Com.*, 26 Ill.2d 32, this court pronounced: "To come within the statute the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor nor even that it was the principal causative factor, but only that it was *a* causative factor in the resulting injury." (26 Ill.2d at 45.) It is pertinent, too, to observe that we have said that even though it seems probable from the evidence that the ultimate outcome of a decedent's heart condition would have been death at some indeterminate date in the future, and possibly under circumstances in no way related to employment, these contingencies will not, of themselves, necessarily invalidate an award as being manifestly against the weight of the evidence where the evidence was such that the Commission could have properly inferred that occupational activity was a causative factor in hastening the decedent's death. *Rock Road Construction Co.* v. *Industrial Com.*, 37 Ill.2d 123, 128; accord, *Teletype Corp.* v. *Industrial Com.*, 38 Ill.2d 470, 472.

Here, it could be reasonably concluded that the injury on the job was the origin of a painful, taxing and progressively worsening condition of the foot, which became gangrenous and required amputation of the toe. It could be fairly found that this condition coincided with an aggravation of Oakley's heart condition and was a causative factor in accelerating his death. The testimony of the claimant's medical expert supported these conclusions. Thus, though there was evidence to the contrary, we cannot say that there did not exist substantial evidence from which the Commission could appropriately infer that the injury at work was

a contributing and causative factor in hastening the decedent's death. *Cf. Gudeman Co. v. Industrial Com.,* 399 Ill. 279; *Cameron, Joyce & Co. v. Industrial Com.,* 324 Ill. 497; *Corn Products Refining Co. v. Industrial Com.,* 402 Ill. 250; *Rock Road Construction Co. v. Industrial Com.,* 37 Ill.2d 123; *Douglass and Co. v. Industrial Com.,* 35 Ill.2d 100.

Accordingly, the judgment of the circuit court of Peoria County is reversed and the decision of the Industrial Commission awarding compensation is reinstated.

*Judgment reversed; award reinstated.*