(No. 44283.—

FORD MOTOR COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Aaron L. Wheeler, Appellee.)

*Opinion filed January 28, 1972.*

GOLDENHERSH, J., took no part.

WILLIAM P. LANDON, of Chicago, for appellant.

PIACENTI, CIFELLI & PIGATO, of Chicago Heights, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Cook County which confirmed the decision of the Industrial Commission awarding compensation to Aaron L. Wheeler for permanent and total disability as a result of a permanent heart condition allegedly caused by an accidental injury which arose out of and in the course of his

employment with Ford Motor Company. The Commission had previously confirmed the decision of the arbitrator.

At the time of the incident in question in this litigation, Wheeler was 45 years of age, and had first been employed by Ford Motor Company in 1961. At that time, he took and passed a physical examination which was given by the company physician. He had always been in good health and was physically strong.

The company physician first took his electrocardiogram on April 20, 1965, and until that time, he had never experienced chest pains, shortness of breath, weakness, or any other indicia of heart disease. This electrocardiogram was interpreted as within normal limits and without evidence of abnormality.

Wheeler's occupation was that of an automation tender and press operator. His duties required the lifting of tubs of stock, weighing from 25 to 40 pounds, and the manual placing of individual pieces of stock, weighing from a few ounces up to 20 pounds, into the press with one hand while activating the press with the other.

On October 27, 1965, Wheeler reported to work at the customary hour of 7:00 A.M., and went about his duties. At 2:30 P.M. he experienced a sudden, hard and stinging pain under his left shoulder blade, which kept getting worse. An electrocardiogram was taken at that time, and the nurse at the company hospital told him that he was "all right." His wife drove him home while he lay on the back seat of the family car. He returned to work the next day, and continued to attend to his usual duties, but he experienced severe pains in his back and had a bulginess and circles under his eyes. He noticed that he was weak, did not feel "right" and was tired. He continued to work until December 29, 1965, but on December 15, he again visited the company medical department and complained of pain in his left elbow, wrist and in his back, as well as of discomfort in his chest. The nurse took his blood pressure and again told him that he "was all right."

On December 29, shortly after punching in and starting to work at the press, he again went to the company medical department and complained to the nurse of pains similar to those which had occurred on October 27, but described the pain as being more severe. After he had seen the nurse, he waited a few minutes and then left the company premises and drove home. He did not return to work, but stayed home until January 12, 1966, when he was hospitalized at St. James Hospital in Chicago Heights.

Thereafter, he was hospitalized at St. James on seven additional occasions up to and including February 9, 1967, and, subsequently, at Hines V. A. Hospital on six occasions between February 9, 1967, and his final discharge on May 27, 1969. All of the treatments which were administered at the hospitals were for his heart condition. Open heart surgery was performed during his last confinement at Hines V. A. Hospital.

The medical evidence submitted on his behalf on arbitration, and on review, consisted of the testimony of two examining physicians, Drs. William V. Fitzsimmons and Nathaniel Greenberg. Both physicians diagnosed his condition as coronary insufficiency, or arteriosclerotic heart disease, and myocardial infarction. Dr. Fitzsimmons, a general practitioner and not a specialist in heart disease treatment, gave his opinion that there could be a causal connection between the worker's present state of ill-being and the incident of October 27, 1965. He further testified that the employee's condition was permanent, that he was incapable of manual labor and could engage only in limited and sedentary activity. The doctor discussed the incidents that occurred while Wheeler was at work on October 27 and on December 29. His opinion was that the myocardial infarction certainly occurred on December 29, and it was possible that it occurred on October 27; that the incident of December 29 was the immediate and direct cause of his condition of ill-being; and that the incident of October 27 was a remote cause.

Dr. Nathaniel Greenberg, who was certified by the American Board of Internal Medicine and specialized in heart and lung diseases, was on the staff of St. Joseph's Hospital and was a member of the faculty at the University of Chicago and Northwestern University Medical School. He had examined Wheeler on December 12, 1969, and testified for him on review. His diagnosis was arteriosclerotic heart disease with myocardial infarction and angina pectoris. His answer to a hypothetical question based on the facts in evidence was that there might or could be a causal connection between the incident of October 27, 1965, and Wheeler's present condition. He further stated that Wheeler's employment on October 27, 1965, did not cause his coronary disease, but that his employment on that day did cause the myocardial infarct which was induced by the lifting performed on that date. He further stated that the injury to Wheeler caused a disabling condition which was permanent and total.

Dr. Donald Atlas, a heart specialist, testified at the arbitration hearing and on review on behalf of the employer. He based his testimony upon an examination of the hospital records of St. James Hospital, and on Wheeler's various electrocardiograms taken on April 20, 1965, on January 12, 15 and 24, and in February of 1966. He found that these electrocardiograms were within normal limits with no evidence of abnormalities, except for slight changes in the T waves. He further stated that coronary insufficiency was evident in these electrocardiograms, but that there was no evidence of myocardial infarction, coronary thrombosis or other coronary attack; and that, based upon the electrocardiograms of St. James Hospital, it was apparent that Wheeler's first myocardial infarction occurred on March 5, 1966. In answer to the hypothetical question based upon the facts in evidence, it was the opinion of Dr. Atlas that Wheeler's condition of ill-being was not related to any work activity of October

27, 1965, but was the result of heart disease with progressive and deteriorating coronary insufficiency.

Our decisions require that we affirm the findings of the Industrial Commission unless they are contrary to the manifest weight of the evidence. Therefore, the sole issue for determination here is whether the finding—that the myocardial infarction which caused Wheeler's permanent and total disability was related causally to the injury which he sustained in his employment—was contrary to the manifest weight of the evidence.

"To come within the statute, the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove that it was the sole causative factor nor even that it was the principal causative factor, but only that it was *a* causative factor in the resulting injury." *Republic Steel Corp. v. Industrial Com., 26 Ill.2d 32, 45.*

Wheeler argues that the Commission's finding of causal connection between trauma and disability suffered by him was not against the manifest weight of the evidence, while Ford maintains that there was no substantial medical evidence in the record which would sustain the finding of causation.

It is primarily the function of the Industrial Commission to resolve disputed questions of fact, including those of causal conection, and to draw permissible inferences and decide which of conflicting medical views is to be accepted. *(Proctor Community Hosp. v. Industrial Com., 41 Ill.2d 537, 541; Precision Connecting Rod Service v. Industrial Com., 40 Ill.2d 277, 279.)* "The concern of a court of review in Industrial Commission cases such as these is not to determine medical questions on which, it appears, men of learning in that field disagree, but rather to pass on the legal question presented, viz., are the findings of the Industrial Commission contrary to the manifest weight of the evidence presented before it."

*(Floyd v. Industrial Com., 47 Ill.2d 193, 195; Holiday Inns of America v. Industrial Com., 43 Ill.2d 88, 89, 90; Precision Connecting Rod Service v. Industrial Com., 40 Ill.2d 277, 281.)* Unless the findings of the Industrial Commission are manifestly against the weight of the evidence, they will not be disturbed on review and this without regard to how this court might or would have decided the case had it been the trier of the facts. *Gould National Batteries, Inc. v. Industrial Com., 34 Ill.2d 151, 158.*

The factual background of this case is similar in many respects to other heart cases reviewed by this court in which compensation awards have been sustained. *Chicago Tribune v. Industrial Com., 42 Ill.2d 476; Proctor Community Hosp. v. Industrial Com., 41 Ill.2d 537; Bruno v. Industrial Com., 31 Ill.2d 447.*

Prior to the date on which Wheeler complained of injury, he was 45 years of age, in good health and had never experienced chest pains, shortness of breath, weakness, or any other indicia of heart trouble. Respectable medical opinion differed sharply on whether or not the exertions of his employment might have caused the myocardial infarction and resulting permanent and total disability. The employer's medical testimony was to the effect that Wheeler suffered from a progressive, deteriorating coronary insufficiency which was unconnected with his employment. Wheeler's medical testimony, by his physician and another medical expert, established a causal connection between Wheeler's ill-being and the incident of October 27, 1965.

There was sufficient evidence in the record to support the Commission's conclusion that the disability in this case was not the result of disease alone, and to support its findings that Wheeler did sustain an accidental injury which arose out of and in the course of his employment and resulted in his total and permanent disability. There-

fore, the circuit court did not err in confirming the award of the Industrial Commission and its judgment is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.