(No. 50820.⬛⬛⬛⬛⬛⬛⬛⬛⬛

HEALTH & HOSPITALS GOVERNING COMMISSION OF COOK COUNTY *et al.,* Appellees, v. THE INDUSTRIAL COMMISSION *et al.*—(Marco Rodia, Appellant.)

*Opinion filed March 20, 1979.*

Jay M. Shapiro and Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Miles N. Beermann, of counsel), for appellant.

Winston & Strawn, of Chicago (Calvin P. Sawyier and Danae Prousis, of counsel), for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that petitioner, Marco Rodia, while in the employ of respondent, Health & Hospitals Governing Commission of Cook County, sustained accidental injuries arising out of and in the course of his employment resulting in his complete disability. He was awarded compensation for

permanent and complete disability, a pension for life (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(f)) and $19,446.60 for medical expenses. On review the Industrial Commission affirmed the award and ordered that it stand as the decision of the Commission. On *certiorari* the circuit court of Cook County, finding that the decision of the Industrial Commission was against the manifest weight of the evidence, reversed and petitioner appealed (Supreme Court Rule 302(a) (58 Ill. 2d R. 302(a))).

The testimony shows that on March 28, 1974, petitioner was employed by respondent as an electrical construction worker and was to install an electrical duct at Cook County Hospital, located at 1835 West Harrison Street, Chicago. While he was standing on a ladder, about five feet above the floor, the ladder collapsed. He fell, striking his right ankle, left leg, left arm, left side, and left shoulder against the concrete floor. He was taken to the hospital, where his treating physician instructed him to stay home and remain off his feet. Petitioner complied, spending the next three weeks in bed. On May 11, 1974, complaining of numbness in his left leg, petitioner was admitted to a hospital. The cause of the numbness was found to be a blood clot in an artery in his left thigh; petitioner was also diagnosed as having pulmonary edema (water in the lungs) and a severe form of congestive heart failure. Doctors surgically removed the blood clot and petitioner was released from the hospital. When he attempted to return to work approximately two months later, petitioner's breathing difficulty and leg stiffness forced him to return home. He was readmitted to the hospital in September and November 1974, and in February 1975, for treatment of his heart condition and has not since returned to work.

The medical witnesses are in agreement that when petitioner was admitted to the hospital on May 11, 1974, he was suffering from severe congestive heart failure and

that because of that condition he was permanently disabled. Dr. Gustave Bermudez, called by petitioner, expressed the opinion that the accident might have aggravated or accelerated petitioner's heart condition, thereby causing the severe congestive heart failure from which he suffered. Dr. Gerry A. Smyth, called by respondent, in response to a hypothetical question, expressed the opinion that there was no causal relationship between the fall from the ladder and petitioner's condition of congestive heart failure.

Dr. Bermudez, a specialist in cardiology and, at the time of the hearing before the arbitrator, chief cardiologist at Columbus-Cuneo-Cabrini Medical Center, testified that he had been petitioner's treating physician for approximately five years. Petitioner had had an episode of heart trouble in 1961, and in 1970 had undergone open heart surgery; on March 7, 1974, he had been hospitalized for "shortness of breath," and Dr. Bermudez described his condition at that time as a "mild episode of congestive heart failure." He had, however, responded well to therapy and had been allowed to return to work without restrictions. Dr. Bermudez testified that petitioner's heart condition suddenly began to deteriorate after the accident of March 28, 1974, and that since that time petitioner "had been on a downhill course." He explained that there is a close relationship between the regulatory centers in the base of the brain and the heart, suggesting that the trauma of the accident could have aggravated or accelerated the deterioration of petitioner's heart condition.

Dr. Smyth, called by respondent, was a specialist in cardiology. He was on the attending staff of Northwestern Memorial Hospital, on the consulting staff of the Veterans Administration Lakeside Hospital, and an associate professor at the Northwestern University Medical School. Dr. Smyth, in response to a hypothetical question, expressed the opinion that there was no causal connection between

the petitioner's fall and the condition upon admission to the hospital some weeks later. He was of the opinion that the embolus diagnosed at the time of the admission was "an acute embolus" which "had happened right on the same day he was admitted." It was his opinion that if the fall from the ladder had worsened petitioner's heart condition he would have experienced congestive failure almost immediately. He testified that trauma could not cause an individual to "throw a clot," that in petitioner's case the clot had formed in the heart and traveled to the leg, and that a drop in blood pressure would not accelerate the "throwing of a blood clot" from the heart. He expressed the further opinion that inactivity would be beneficial and would lessen the likelihood of formation of clots.

Subsequent to the hearing before the arbitrator Dr. Smyth examined petitioner, and in his report, offered in evidence on review, he again expressed the opinion that there was no causal connection between petitioner's fall from the ladder and his state of cardiac failure or the acute embolization to his leg.

Petitioner contends that the evidence is sufficient to sustain the award and that the circuit court erred in holding that the decision of the Commission was against the manifest weight of the evidence. It is respondent's position that the petitioner's injury did not arise out of and in the course of his employment for the reason that the employment was not "a causative factor" in his heart condition, and that neither his employment, nor the fall from the ladder, aggravated or accelerated his preexisting condition.

Where medical testimony is conflicting, it is for the Commission to determine which testimony is to be accepted. (*McLean Trucking Co. v. Industrial Com.* (1978), 72 Ill. 2d 350.) It is the Commission's function to resolve disputed questions of fact, including those of

causal connection. (*Proctor Community Hospital v. Industrial Com.* (1969), 41 Ill. 2d 537.) Respondent argues that the fact that petitioner's congestive heart failure did not occur until approximately 52 days after the accident made it "highly unlikely that his heart failure occurred in the course of his employment." We note that in *Proctor* the employee was injured on December 11, 1962, and his cardiac failure and death occurred on June 10, 1963. In reinstating the award the court said:

> "It is pertinent, too, to observe that we have said that even though it seems probable from the evidence that the ultimate outcome of a decedent's heart condition would have been death at some indeterminate date in the future, and possibly under circumstances in no way related to employment, these contingencies will not, of themselves, necessarily invalidate an award as being manifestly against the weight of the evidence where the evidence was such that the Commission could have properly inferred that occupational activity was a causative factor in hastening the decedent's death." 41 Ill. 2d 537, 542.

The Commission can draw reasonable inferences from the evidence, and the fact that other inferences might have been drawn does not render them contrary to the manifest weight of the evidence. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10.) The Commission's decision was not against the manifest weight of the evidence, and in holding that it was, the circuit court erred.

Respondent also contends that it was prejudiced by its inability to have petitioner examined by a doctor (Ill. Rev. Stat. 1973, ch. 48, par. 138.12) prior to the arbitration hearing. The record shows that on the day on which respondent's doctor had scheduled an examination petitioner was hospitalized and unable to keep the appoint-

ment. The hearing before the arbitrator had been continued three times on the respondent's motion and more than two months had elapsed since the date on which the case was set for "immediate hearing." The hearing before the arbitrator was recessed after petitioner testified and was not reconvened until six months later. After petitioner rested his case the hearing was recessed for three weeks. Colloquy between counsel indicates that respondent requested that petitioner be examined by Dr. Buckingham and that the "proofs be kept open" so that he could testify following the examination. Dr. Smyth examined petitioner subsequent to the hearing before the arbitrator, and the transcript of the proceedings on review contains his report, which was virtually identical, including his opinion on causation, to his testimony before the arbitrator. The record does not show any further request for examination by Dr. Buckingham. Under the circumstances, respondent has not shown that it was prejudiced either by the arbitrator's requiring that the hearing proceed or petitioner's failure to be examined.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the award of the Commission is reinstated.

*Judgment reversed;*
*award reinstated.*