(No. 49142

CROW'S HYBRID CORN CO., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Carl L. Hartman, Appellee.)

*Opinion filed May 26, 1978.—Rehearing denied*
*September 29, 1978.*

KLUCZYNSKI, J., took no part.

Sebat, Swanson, Banks, Lessen & Garman, of Danville, and Williams, McCarthy, Kinley, Rudy & Picha, of Rockford (Robert J. Banks, Jr., of Danville, and George J. Picha and Russell D. Anderson, of Rockford, of counsel), for appellant.

Scheele, Murphy & Serkland, Ltd., of La Grange (James C. Serkland, of counsel), for appellee.

Rooks, Pitts, Fullagar & Poust, of Chicago (Douglas F. Stevenson, Stephen J. Friedman, and Ian M. Sherman, of counsel), for *amici curiae* Illinois Manufacturers Association, Northwestern Steel & Wire Co., Standard Oil Co. (Indiana), Johns-Manville Corp., United States Steel Corp., Illinois Bell Telephone Co., Casualty Insurance Co., Sears, Roebuck & Co., American Insurance Association, Associated General Contractors of Illinois, Anchor Hocking Corp., Employers Mutual Companies, Alexander & Alexander, and Commonwealth Edison Co.

MR. JUSTICE CLARK delivered the opinion of the court:

In this workmen's compensation case, an arbitrator found no causal connection between the condition complained of, a hernia, and an accident alleged to have occurred September 23, 1971. The Commission found the arbitrator's decision "erroneous," but also denied the claim of Carl L. Hartman for failure to prove "notice of hernia pursuant to Section 6(c)(1)" of the Workmen's

Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.6(c)(1); hereafter Act). The circuit court of Iroquois County reversed the decision of the Commission and remanded the cause with directions that the Commission enter a decision awarding claimant "medical, hospital and surgical expenses related to the hernia and stomach surgery," temporary total compensation for lost time, and compensation for the 100% loss of the use of one testicle. The Commission did so. The circuit court order confirming the Commission is appealed from pursuant to Supreme Court Rule 302(a). 58 Ill. 2d R. 302(a).

On appeal, our review in workmen's compensation cases "typically is limited to a determination of whether findings of the Commission were against the manifest weight of the evidence." (*Pope v. Industrial Com.* (1970), 45 Ill. 2d 48, 52.) Before we can reach that issue, however, we are compelled to resolve threshold problems.

The first issue is the sufficiency and timeliness of claimant's notice.

On September 23, 1971, claimant, while "moving gates in the old dryer" in the course of his employment with Crow's Hybrid, dropped one because "something hurt me on the side." Although he felt a bulge, which grew larger, in the area of the groin, he continued to work until the middle of December 1971. During that time claimant received no treatment but did wear a truss. On December 15, 1971, Dr. Dean Hungness diagnosed a hernia and recommended surgery. Claimant's wife testified that, on the same day, she talked to Mr. Crow and informed him that claimant had been injured at work and the doctor had recommended hernia surgery. The claimant was hospitalized from December 16, 1971, until January 18, 1972, during which time, claimant testified, Crow visited him several times.

Claimant maintains the employer received notice of his injury by means of Mrs. Hartman's phone call to Crow

on December 15, 1971. The employer contends that the phone-call notice is insufficient. The employer cites *Fenix-Scisson Construction Co. v. Industrial Com.* (1963), 27 Ill. 2d 354 (in which the claimant's wife phoned his foreman to tell him claimant was hospitalized and wished to see him), as controlling. As appealing as that case is, it is inapposite. There the wife failed to tell the employer that claimant was hospitalized due to an accident at work. Here Mrs. Hartman's testimony, which is uncontradicted in the record, was that she told Crow the claimant had been injured at work. (The Industrial Commission's finding that the claimant "failed to prove notice of hernia pursuant to Section 6(c)(1)" is apparently concerned with the timeliness of the notice.) A subsequent case is more supportive of the claimant's position. In *Andronaco v. Industrial Com.* (1972), 50 Ill. 2d 251, the only notice given the employer was a phone call from the claimant's wife, who asked to speak to the foreman; unable to reach him, she talked to another man and told him that her husband, the employee, had died from a heart attack that same day; this was found to be sufficient notice without prejudice to the employer. (See *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32. *Cf. Heyworth v. Industrial Com.* (1926), 321 Ill. 298.) The employer in the instant case was aware of the claimant's condition: after the phone call Crow visited the claimant in the hospital, and the employer's accountant testified he learned of the claimant's hernia in December 1971. We find Mrs. Hartman's phone call, under these circumstances, constituted adequate notice. The Act provides for oral notice (Ill. Rev. Stat. 1971, ch. 48, par. 138.6(c)(3)). Moreover, "liberality in the matter of notice should be allowed to the extent that it is consistent with the protection of the employer against unjust claims." *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 41.

We next consider the timeliness of the notice. Claim-

ant concedes that notice (on December 15, 1971) was not given within 15 days of the accident (on September 23, 1971) as required by the statute in effect then (Ill. Rev. Stat. 1971, ch. 48, par. 138.6(c)):

"(c) No proceedings for compensation under this Act shall be maintained unless notice of the accident has been given to the employer as soon as practicable, but not later than 45 days after the accident. Provided:

(1) In cases of hernia, notice shall be given the employer within 15 days after the accident."

However, claimant argues that his situation falls under section 8(j) of the Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.8(j)):

"(j) 1. In the event the injured employee receives benefits, including medical, surgical or hospital benefits under any group plan covering non-occupational disabilities contributed to wholly or partially by the employer, which benefits should not have been payable if any rights of recovery existed under this Act, then such amounts so paid to the employee from any such group plan as shall be consistent with, and limited to, the provisions of Paragraph 2 hereof, shall be credited to or against any compensation payment for temporary total incapacity for work or any medical, surgical or hospital benefits made or to be made under this Act. *In such event, the period of time for giving notice of accidental injury* and filing application for adjustment of claim *does not commence to run until the termination of such payments. \*\*\**"
(Emphasis added.)

The record establishes that insurance payments were made under the group policy the employer had with the Prudential Insurance Company during the period from January 28, 1972, when the insurance claim was filed, until October 9, 1972, when the payments terminated. This plan covered nonoccupational disabilities. Claimant's notice had been filed long before "the period of time for giving notice" had commenced to run on October 9, 1972. Moreover, this court has construed section 8(j) of the Act

in favor of a claimant on facts less favorable to the claimant than here. *Caterpillar Tractor Co. v. Industrial Com.* (1965), 33 Ill. 2d 78; *Creel v. Industrial Com.* (1973), 54 Ill. 2d 580.

The employer counters with the argument that subsection 3 of section 8(j) of the Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.8(j)(3)) is applicable:

> "3. The extension of time for the filing of an Application for Adjustment of Claim as provided in paragraph 1 above shall not apply to those cases where the time for such filing had expired prior to the date on which payments or benefits enumerated herein have been initiated or resumed."

The employer asserts that because the 15 days for filing notice of the accident (on September 23, 1971) in a hernia case had run long before the "payments or benefits *** [had] been initiated" (in 1972), claimant's notice may not benefit by the extension of time allowed in section 8(j)(1). We disagree. Subsection 3 says absolutely nothing about the filing of notice. It refers only to the filing of an application for adjustment of claim (which, in this case, was done on December 4, 1972, well within a year of the termination of the group insurance payments on October 9, 1972 (Ill. Rev. Stat. 1971, ch. 48, par. 138.6(c)). Therefore, we find the notice sufficient and timely.

Unlike the arbitrator, who found no causal connection between the accident and the injuries complained of, the Industrial Commission found that the claimant "sustained accidential injuries arising out of and in the course of the employment." The circuit court confirmed this portion of the Commission's findings but set aside the Commission's denial of the claim for failure to prove notice, and ordered the Commission to enter an award for the claimant. Because of our disposition of the notice issue above, the question remains whether the findings of the Commission were against the manifest weight of the evidence. It is not

for us to decide whether we would have entered an award or not on the evidence. Rather the question is whether the evidence sufficiently supports the Commission's findings. We believe it does.

Under the Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.8(d)(1)), an "injured employee, to be entitled to compensation for hernia, must prove:

>A. The hernia was of recent origin;
>B. Its appearance was accompanied by pain;
>C. That it was immediately preceded by trauma arising out of and in the course of the employment;
>D. That the hernia did not exist prior to the accident."

This was the law in effect when the injuries occurred. (*Stanswsky v. Industrial Com.* (1931), 344 Ill. 436, 439-40; *Sroka v. Industrial Com.* (1952), 412 Ill. 126, 131.) Crow's Hybrid does not question that the claimant suffered trauma and pain. It challenges the claimant's assertions that the hernia was of recent origin and that the hernia did not exist prior to the accident. Crow's Hybrid relies on the testimony of its witness, Dr. Raymond Donovan, who performed some 1,500 hernia operations and who performed the hernia operation on the claimant. He said the hernia was "a huge sliding type" which had been developing over a period of five to seven years prior to the surgery on December 17, 1971. Dr. Dean Hungness, who had been the claimant's physician for over 10 years prior to the accident and who assisted in claimant's operation, admitted that as early as 1964 the claimant complained of pain in the area of the groin but that he never treated him for that. On subsequent occasions before December 1971, perhaps as many as 15, Dr. Hungness treated or performed medical checkups for claimant but found no hernia condition. In October 1969, he checked specifically for a hernia but found none. Although Dr. Hungness testified that he could not say with a reasonable

medical certainty that claimant's condition was the result of the September 1971 lifting accident, he could say that "particular instance could have caused the condition," and that, based on a reasonable degree of medical certainty, claimant's "condition of ill-being" found on December 15, 1971, "was related to the lifting-type incident" of September 1971. He also testified that the loss of the testicle was related to the hernia condition. (Dr. Donovan did not testify as to the loss of the testicle.) As to a thrombosis or embolic damage to the artery, Dr. Donovan agreed this could have resulted from the hernia surgery.

On this testimony the Commission reasonably concluded that the diagnosed hernia was of recent origin, not antedating the September 1971 accident. Dr. Donovan was quite experienced in hernia diagnosis but he was not familiar in any way with the claimant's medical history except as apparently advised by Dr. Hungness, who had been claimant's physician since 1959. The record shows Dr. Hungness was also experienced with hernia conditions. As we have stated frequently in the past, "The choice between conflicting medical testimony is in the province of the Industrial Commission, and its findings will not be disturbed unless they are against the manifest weight of the evidence. [Citations.] 'It is primarily the function of the Industrial Commission to resolve disputed questions of fact, including those of causal connection, and to draw permissible inferences and decide which of conflicting medical views is to be accepted.' (*Ford Motor Co. v. Industrial Com.* (1972), 50 Ill. 2d 267, 271.)" *Hans Jensen & Sons, Inc. v. Industrial Com.* (1977), 68 Ill. 2d 210, 213.

Finally, the employer contends that because claimant received unemployment compensation for 26 weeks between February 1972 (when he worked at Crow's Hybrid for a few days until told by the employer he would not be permitted to work) and October 1972 (when he had more surgery), the Commission erred in allowing temporary

total compensation during that period, including those 26 weeks. We disagree. Under the Unemployment Compensation Act:

> "An individual shall be ineligible for benefits for any week with respect to which he is receiving or has received remuneration in the form of compensation for temporary disability under the Workmen's Compensation Act of this State, or under a workmen's compensation law of any other State or of the United States. If such remuneration is less than the benefits which would otherwise be due under this Act, he shall be entitled to receive for such week, if otherwise eligible, benefits reduced by the amount of such remuneration." Ill. Rev. Stat. 1971, ch. 48, par. 436.

It is clear that an employer is liable for all disabilities traceable to the accidental injuries sustained by an employee in the course of employment. (*Shell Oil Co. v. Industrial Com.* (1954), 2 Ill. 2d 590, 595.) The import of the statute is that the unemployment compensation, to the extent that claimant is eligible for it, will be reduced *by* the amount of *the disability benefits*—not that the *disability benefits will be reduced* or not paid at all. This is not to suggest that claimant should receive a double recovery not permitted by statute. The practical effect of the case before us is that claimant did not have the disability benefits in hand while he was *apparently* eligible for unemployment compensation. Once the disability benefits are received, the unemployment compensation should be reduced or, as here and as claimant acknowledges, the unemployment compensation fund should be reimbursed. What Crow's Hybrid is effectively suggesting is that the unemployment compensation fund should be liable for 26 weeks of claimant's disability which was attributable to Crow's Hybrid. A further implication of Crow's Hybrid's last contention is that claimant was not really temporarily totally disabled, as the Commission found, because in order to receive unemployment compen-

sation, a worker must be available for, *i.e.,* able to, work. This can be countered in two ways. First, the statutory provision, quoted above, does not, by implication or otherwise, mutually exclude or find inconsistent receipt of disability benefits and availability for work. (Claimant was advised by Dr. Hungness that he was available for some "light work.") Second, we have already determined that the findings of the Commission were not against the manifest weight of the evidence.

For the reasons above, we affirm the circuit court's confirmation of the Commission's award to the claimant.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.