(No. 54652.—

ZENITH COMPANY, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.* (Joseph Suwanski, Appellee).

*Opinion filed June 1, 1982.*

Gifford, Detuno & Gifford, Ltd., of Chicago (Thomas W. Gifford, of counsel), for appellant.

Murges and Bowman, Ltd., of Chicago (George J. Murges, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

Joseph Suwanski filed an application for adjustment of claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) for injury to his back. After a hearing, an arbitrator found that the claimant had sustained accidental injuries arising out of and in the course of his employment by the respondent, Zenith Company. The arbitrator awarded him compensation for both temporary total incapacity and permanent partial disability. That decision was reviewed and modified by the Industrial Commission. The Commission found that the claimant's disability condition had not reached a state of permanency, and therefore it did not award permanent partial disability compensation. The Commission, however, increased the award of temporary total disability. The circuit court of Cook County, following the granting of Zenith's petition for *certiorari,* confirmed the decision of the Commission. The respondent has appealed directly to this court under Rule 302(a) (73 Ill. 2d R. 302(a)).

The hearing before the arbitrator began on January 24, 1978. The claimant testified that on June 11, 1976, he was employed by the respondent as a general maintenance worker. He had an eighth-grade education and had worked for the respondent as a maintenance worker for the previous nine years. He was 52 years old at the time of the accident. In 1960, 1961 and 1965 he had injured his back while working for two other employers: the city of Chicago's Bureau of Sanitation in 1960 and 1961, and the Permaline Rubber Company in 1965. After the 1961 injury, he underwent surgery for the removal of a disc and was operated upon after the 1965 injury as well. As a result of those injuries, he received workmen's compensation awards for the permanent loss of use of his left leg to the extent of 22¹/₂%, and his right leg to the extent of 7¹/₂%. He re-injured his back in 1975 while employed by

Zenith, but that injury did not require surgery.

He testified that he reported for work at 7 a.m. on Friday, June 11, 1976. Earlier that morning he awoke with a slight pain in his back, but said that he was able to "walk it off" before going to work. He had been experiencing back pain upon awaking since 1965.

On June 11, the claimant testified, his foreman instructed him to line a stainless-steel housing with fiberglass. The housing weighed 250 to 500 pounds, and it was about 46 inches in circumference and 12 to 16 inches deep. To enable him to reach the bottom of the housing, he and his supervisor, Dean Whitehead, tipped the tank and straightened it to a standing position. After they tipped the tank, the claimant felt a pain in his lower back. He told Whitehead, "Dean, I think I done something to my back. I don't know what it is. I feel pain in my back and legs." The accident occurred about 2 p.m., and the claimant rested the remainder of the day. That night he felt a "pinch in the back" and he noticed his legs were growing numb.

He did not work around the house that weekend, he testified. On Sunday, June 13, he did carry a two- or three-pound bag of garbage to a trash can about 25 feet from his house. He felt the same "pinch" in his back as he walked to the trash can. His wife had handed him the bag, and he tossed it into the trash can without bending over. As he walked back to the house, he felt a sharp pain in the back and fell to the ground. In a few minutes, he was able to stand up, and he returned to the house.

He stated that when he reported for work on Monday, June 14, he went directly to the company physician. The claimant told the doctor what had occurred while working on Friday and taking out the garbage on Sunday. The doctor told him that he had injured himself at home and that he would have to consult his own physician.

He then went to Hines Veterans Administration Hos-

pital. There he was given medication and was directed to lie under a heat lamp and to bathe in hot water. He has since done that twice a day as he was instructed. He returned to the hospital three or four times after June 11 because of back complaints. It appears that those visits ended by August 2. Also since June 11, 1976, he has visited another physician, Dr. Manancho, about five times for examination and medication regarding the back. The only medication he was taking at the time of the hearing, however, was over-the-counter pain tablets four times a day.

The claimant said that now he awakes with pain in his back and numbness in his legs. He had experienced occasional numbness since 1961, but the numbness has been growing worse since June 11, 1976, the date of injury in the present claim.

The claimant stated that he went back to the respondent's plant on July 2 or August 2, 1976, because his doctor had told him that he was able to do only light work until he regained his strength. He spoke with the head of the personnel office, who asked the plant foreman whether any light duty was available. The claimant was not given work. He returned to the personnel office on August 7 or 8, 1976, again seeking light work. Again, he was told that there was no work for him and was also advised that he had been laid off as of August 2.

He testified that he had not worked since June 11, 1976. However, he did own a hot dog vending truck that, for approximately six months, he operated for about an hour and half a day. He would drive to a location near a ballpark, and his wife and daughter would prepare and sell hot dogs while he sat in the front seat of the truck. He would put stacks of soft drink cans into the truck cooler, and was able to move single cases of soda. He collected unemployment compensation for a year.

Dr. Irwin T. Barnett, an orthopedic surgeon whom the claimant consulted at his attorney's request, testified that

he examined the claimant twice. The first examination was on June 25, 1976, and the second on February 3, 1977.

In the first examination the doctor found atrophy in the left leg, diminished sensation in two left toes, and weakness of dorsiflexion of the left big toe. From the examination the doctor's diagnosis was: (1) "residuals of a low back injury, with bilateral sciatic nerve irritations"; (2) "post-laminectomy syndrome"; and (3) "flattening of the fourth and fifth lumbar disc spaces."

In the second examination Dr. Barnett discovered increased atrophy in the left leg, increased disc involvement, and further nerve-root involvement in the left lower extremity. Sensory loss in the left toes, however, had subsided, and the weakness of dorsiflexion of the big toe was only "slight." In addition, the doctor found that since the first examination the claimant had developed a scoliosis, or curvature of the lumbar spine. Dr. Barnett stated that the scoliosis brings pressure to bear upon the various musculature and ligamentous portions of the spine, causing pain. He considered that the scoliosis was traumatic in origin and said that in most cases where scoliosis is traumatic it will subside in time.

In response to a hypothetical question that assumed these medical findings and the facts to which the claimant testified, Dr. Barnett gave an opinion that the claimant, on June 11, 1976, aggravated his back condition. That aggravation precipitated new low-back difficulties and possibly additional disc and nerve-root involvement at the level of L-4—L-5 or L-5—S-1. He concluded that the scoliosis was attributable to the June 11 incident. The garbage-can incident of June 13, the doctor said, was a continuation or an exacerbation of what had occurred on June 11.

As to the claimant's ability to work, the doctor said that the claimant could perform "sedentary work," but that he should avoid work that involved lifting or exces-

sive back bending or motion. Moreover, standing for two to four hours would be painful.

The respondent introduced evidence to counter the testimony of the claimant and of Dr. Barnett. The claimant's employee health record had a nurse's notation that appears to have been entered on June 11, 1976, at 7:30 a.m. The notation stated that the claimant sustained back pain when lifting a bag of garbage on June 10, and that the claimant was to see the plant doctor on June 14. The next notation was dated June 14 and was entered by the doctor. That notation is: "states that on Fri lifted," "on Sun while carrying garbage noted low back pain 'I think I have recurrence of my back problem.' "

The respondent also introduced a medical report by Dr. Ben B. Camacho, Jr., who examined the claimant on August 12, 1977, at the respondent's request. The report concluded, "It appears [that the claimant] could have just sustained musculo-ligamentous strain to his back in the alleged episode of June, 1976 with today's examination showing a satisfactory recovery, without need for further treatment or disability as far as that alleged episode is concerned."

On this evidence the arbitrator awarded compensation for $7^2/_7$ weeks of temporary total incapacity for work and compensation for permanent and complete loss of use of the left leg to the extent of an additional 10%. (As has been stated, the claimant had already been compensated for a $22^1/_2\%$ permanent loss of use of his left leg.)

The Commission, without hearing additional evidence, set aside the award. In its place, the Commission awarded compensation for temporary total incapacity for a period of $84^4/_7$ weeks, and it made no award for permanent disability. The effect of the modification was to increase the award of temporary disability from compensation for the period between the time of the accident and the time the claimant returned to his employer seeking light work, to

compensation for the period between the time of the accident and that of the arbitrator's hearing (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(b)). The Commission stated: "[T]he disabling condition is temporary and has not yet reached a permanent condition. *** [T]his award in no instance shall be a bar to a further hearing and determination of a further amount of temporary total compensation or of compensation for permanent disability." Too, the Commission ordered that the respondent pay for mental, physical and vocational rehabilitation of the claimant.

The respondent challenges both the Commission's finding that the claimant suffered accidental injuries arising out of and in the course of his employment, and its decision that temporary disability compensation should be for $84^4/_7$ weeks rather than $7^2/_7$ weeks, as the arbitrator decided. The respondent recognizes that the Commission's findings may be set aside only if contrary to the manifest weight of the evidence. *White v. Industrial Com.* (1982), 88 Ill. 2d 523, 526; *Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, 467.

First, we shall not disturb the finding of an accidental work-related injury. The claimant testified to the pain when he tilted the housing at work, and there was medical testimony that, assuming the facts according to the claimant's testimony, this activity aggravated his previous back injuries.

The respondent contends, nevertheless, that this evidence is insufficient under the circumstances here. It cites *Caterpillar Tractor Co. v. Industrial Com.* (1978), 73 Ill. 2d 311, 315, where this court stated:

"Although a claimant's own testimony may be sufficient to support an award, when the claimant's testimony is virtually the only evidence favoring an award, and that testimony is repeatedly contradicted by the record, then it is this court's duty to disallow the claim."

The only contradiction of any substance upon which

the respondent relies, however, is through a notation dated June 11, 1976, in the employee's health records. There, the respondent's nurse noted that the claimant sustained back pain when lifting garbage on June 10. The notation does not directly contradict the possibility of an accident in the afternoon of June 11. Moreover, the next notation appears to support the claimant's testimony, because it mentions the June 11 lifting incident and places the garbage incident on June 13. The employees who made the notations did not testify, and the custodian of the records upon whose testimony the records were admitted had no personal knowledge about the notations. In these circumstances, we cannot say that the contradiction of the claimant's testimony was such as to make the Commission's finding against the manifest weight of the evidence.

As to the second issue, we judge that neither was the award for temporary total incapacity against the manifest weight of the evidence. The respondent's contention of error is based upon its argument that the claimant was laid off because no work was available, not because of any disability, that the claimant was "self-employed" at the hot dog truck, and that it seems he did not receive medical treatments after August 1976. The respondent's argument is unsupported by the record. There was sufficient medical evidence that the claimant's injury had caused a disability that prevented him from performing his maintenance job.

Too, the record hardly supports the statement that the claimant was "self-employed." The claimant testified that he had sold hot dogs even before the injury, and we do not consider that because he spent a few hours a day for some months working at his hot dog truck with his family he should not be allowed to receive temporary total disability compensation. In *J. M. Jones Co. v. Industrial Com.* (1978), 71 Ill. 2d 368, 372-73, a case in which a

warehouse worker sustained a back injury but was still able to drive a bus a few hours a day, it was stated:

> "Respondent contends that because petitioner was employed part time as a bus driver, he may not be awarded temporary total disability. In *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, we said: 'Evidence that the employee has been or is able to earn occasional wages or to perform certain useful services neither precludes a finding of total disability nor requires a finding of partial disability. (*E.g., Smallwood v. Industrial Com.* (1972), 53 Ill. 2d 151, 156; *Universal Bleacher Co. Service Co. v. Industrial Com.* (1969), 43 Ill. 2d 168.) For the purposes of section 8(f) [section 19(b)], a person is totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists.' 71 Ill. 2d 353, 361-62.
>
> From our examination of the record we conclude that the fact that petitioner, for some period of time following his injury, could drive a school bus for a 1¼-hour period each morning and afternoon does not require reversal of the Commission's finding that he was, for the period of time involved, temporarily totally disabled."

The fact that he was no longer receiving medical treatment does not preclude an award. See *Kropp Forge Co. v. Industrial Com.* (1981), 85 Ill. 2d 226, 230.

As has been stated, the Commission, without taking evidence, ordered that the respondent pay for mental, physical and vocational rehabilitation of the claimant. We consider that that portion of the Commission's order was improvidently entered and accordingly it is set aside. In *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489, we noted the absence of any statutory procedures to govern proposed rehabilitation programs, and we later recommended to the legislature that it examine whether rehabilitation counseling and procedures through public or private agencies should be provided for to assist the Industrial Commission and the courts in this area. In *Kropp Forge Co. v. Industrial Com.* (1981), 85 Ill. 2d 226, we

288

deemed that a similar order by the Commission, entered without supporting evidence, was harmless and we let it stand. We set aside that portion of the Commission's order here because there appears to be a developing practice to have such orders entered routinely and unnecessarily and because their entry is a potential source of confusion.

For the reasons given, the judgment of the circuit court is affirmed, except for that portion which confirmed the Commission's order for payment for rehabilitation of the claimant. The cause is remanded to the Industrial Commission for issuance of a decision in accordance with this opinion.

*Affirmed in part and reversed in part; cause remanded, with directions.*