FORD MOTOR COMPANY, Appellant, *v.* THE INDUSTRIAL COMMIS-SION *et al.* (Wardell Minor, Appellee).

First District (Industrial Commission Division) No. 1—84—422WC

Opinion filed August 1, 1984.

Perz & McGuire, of Chicago (Frank M. Perz and Robert A. Soltis, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (John W. McCaffrey and Carolyn B. Notkoff, Assistant Attorneys General, of counsel), for appellee The Industrial Commission.

Michael R. Schneider, of Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago, for other appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Ford Motor Company appeals from an order of the circuit court of Cook County which confirmed a decision of the Industrial Commission. The Industrial Commission had agreed with the award by the arbitrator of 12⁶/₇ weeks' compensation for temporary total disability but had modified the arbitrator's finding of 5% permanent loss of use of the right foot of the claimant, Wardell Minor, and granted compensation for 2¹/₂% loss of use of the foot. In addition, the Commission, on its own motion, ordered Ford to repay to the State unemployment compensation benefits for the period of a general layoff and to pay the employee the excess. It specifically found that the order of reim-

bursement was not a lien against the award of compensation.

Claimant was employed by Ford as a spot welder. On December 5, 1978, he twisted his right ankle while walking over a pile of guard rails lying on the floor. He received first aid from the plant nurse and returned to work the following day, being given whirlpool treatments at the plant and doing odd, sit-down jobs. This continued for six to seven weeks, when he returned to regular duty. He continued to experience problems described as "throbbing" and "locking" in his ankle and stiffening of his leg.

On June 11, 1980, he had a second accident, twisting his ankle on the ladder used in the pit in which he worked to install floor pans in the assembly of new cars. He was sent to the Hammond Clinic, where the ankle was X-rayed and bandaged. He was referred back to the plant infirmary for follow-up care. He saw Dr. Campbell, the company physician, who gave him a cane and started him on whirlpool treatments. He returned to work the day after the accident under instructions from Dr. Campbell to do limited walking. He was unable to do spot welding, and he was given odd jobs where he could sit down and rest if the ankle bothered him. This continued until the general layoff on June 30, 1980. Before he left the plant on the layoff he was instructed by Dr. Campbell to "[s]tay off" his ankle. He soaked his ankle about every day.

When the layoff ended about August 25, 1980, he went back to his regular job, but he could not keep up with production because his ankle was giving him pain. He went back to Dr. Campbell, and whirlpool treatments were again prescribed, but he was taken off his regular job and put on "all kind of odds and ends." In October of 1980 employees who were on light duty were let go because there was no work available, and he was "sent out on worker's compensation" on October 6. He received no money during the first layoff. On November 10, 1980, he returned to his regular job, spot welding.

The June 12, 1980, report from the Hammond Clinic signed by Dr. Vallejos, M.D., diagnosed a "Sprained Right Ankle," and advised compression bandage and crutches. X rays were shown negative of fractures, and the employee was referred back to the company medical department for further treatment.

The evaluation report of Dr. David Fisher dated December 15, 1980, noted, as objective findings, a reaction to palpation on the anterior and lateral aspects of the right ankle region; that the circumferential measurement of the ankles and of the supra-malleolar region are within normal limits; that no fracture or dislocation are revealed by X-ray examination; but that there was a slight difference in motion

in the left and right ankle and forefoot. The report concluded that the employee had sustained deep soft tissue and ligamentous injuries to his right ankle and that this was an aggravation of a similar injury in 1978.

## I

The Industrial Commission has raised an issue of waiver, which we first consider. The arbitrator, as noted, decided that petitioner was temporarily totally incapacitated for work during the layoff from June 30, 1980, through August 25, 1980. The Commission argues that, in its summary sheet for oral argument on Ford's appeal to it, an "alternative" argument was presented by Ford that conceded that the employee was entitled to temporary disability benefits for the time he was unemployed but only to the extent that such benefits exceeded the amount of unemployment compensation already received. The principle that an appellate court will consider only questions raised in the trial court also applies to a review of administrative determinations. (*Leffler v. Browning* (1958), 14 Ill. 2d 225, 228.) The summary sheet does not appear in the record before us, but we have been furnished with a copy and a stipulation that it be made a part of the record on appeal. The first claim of error involves the unemployment-compensation issue. The second states that "[t]he amount of disability awarded is too high." The text of the proposed findings concerns the unemployment-compensation issue and a further argument that, even if the petitioner was entitled to temporary total compensation, Ford would be liable only for the excess. There is, however, the statement disputing the temporary total award, because "[h]e also received no treatment during that period of time." Under these facts we choose not to apply the rule of waiver to bar Ford's first contention here that the award of temporary total disability for the June 30 to August 25 period is invalid because of a claimed lack of evidence that Minor would have been working but for his accident at work.

## II

On the merits, however, we conclude that the claimant has proved, by the manifest weight of the evidence, his entitlement to temporary total disability payments during the layoff period.

"Temporary total disability compensation is to be awarded for the period of time between the injury and the date the employee's condition has stabilized." (*Caterpillar Tractor Co. v. Industrial Com.* (1983), 97 Ill. 2d 35, 44.) One is temporarily totally disabled when " ' "he cannot perform any services except those for which no reason-

ably stable labor market exists." ' " (*Zenith Co. v. Industrial Com.* (1982), 91 Ill. 2d 278, 287.) The fact that an employee is no longer receiving medical treatment does not preclude an award of temporary total disability. (91 Ill. 2d 278, 287.) The Commission's resolution of factual issues, conflicting medical testimony, and the weight and credibility of testimony will not be disturbed unless it is against the manifest weight of evidence. See, *e.g., McLean Trucking Co. v. Industrial Com.* (1983), 96 Ill. 2d 213, 219.

■ The Industrial Commission could properly find from the evidence that, even if there had been no layoff, the claimant was able to do only light work during the layoff period. At the time he left the plant on layoff he was under instruction by the company doctor to "stay off" his ankle. When the period ended he was unable to perform his regular job because of pain in his ankle, and was, in fact, taken off that work and placed on light work.

■ Ford relies on *Mt. Olive Coal Co. v. Industrial Com.* (1920), 295 Ill. 429, and *Guest Coal Co. v. Industrial Com.* (1927), 324 Ill. 268, to argue that temporary total disability is to be awarded only for the period in which the injured employee is totally incapacitated for work, due to the injury. In *Mt. Olive*, the opinion noted that when the employee's broken bone in his arm "had completely knitted and the usual attendant soreness and stiffness disappeared, the period of the temporary incapacity ended and any disability then existing was necessarily the result of the permanent character of the injuries received." (295 Ill. 429, 432.) In *Guest*, the evidence clearly showed that the employee was not temporarily totally incapacitated for work for 58³/₇ weeks from the January 7, 1924, injury, when he could do construction and carpenter work prior to September 4, 1924. (342 Ill. 268, 274-75.) Both cases are distinguishable on their facts.

Neither the ability to do light work nor the nonreceipt of medical treatment, as argued by Ford, preclude a finding of temporary total disability. See *Zenith Co. v. Industrial Com.* (1982), 91 Ill. 2d 278, 286-87.

### III

■ Ford next argues that the Workers' Compensation Act contains no provision empowering the Commission to order repayment of unemployment compensation. Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*

The Industrial Commission defends this portion of the Commissions' decision, noting that the Unemployment Insurance Act allows for such recoupment:

"D. Whenever, by reason of a back pay award made by any governmental agency or pursuant to arbitration proceedings, or by reason of a payment of wages wrongfully withheld by an employing unit, an individual has received wages for weeks with respect to which he has received benefits, the amount of such benefits may be recouped or otherwise recovered as herein provided. An employing unit making a back pay award to an individual for weeks with respect to which the individual has received benefits shall make the back pay award by check payable jointly to the individual and to the Director." Ill. Rev. Stat. 1981, ch. 48, par. 490D.

The Commission also refers to section 8(b)(1) of the Workers' Compensation Act, which, in substance, provides that temporary total incapacity for work shall be equal to 66⅔ of the employee's weekly wage computed according to a schedule set forth in the statute. (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(b)(1).) It contends that, although Minor was not awarded "back pay" as stated in the Unemployment Insurance Act, quoted above, the payments were in lieu of salary under section 8.8(b)(1) and thus qualified. The Commission also relies upon *Crow's Hybrid Corn Co. v. Industrial Com.* (1978), 72 Ill. 2d 168, 177-78.

An argument similar to that made by Ford here was made in *Crow's*. There, the court stated that "an employer is liable for all disabilities traceable to the accidental injuries sustained by an employee in the course of employment." (*Crow's Hybrid Corn Co. v. Industrial Com.* (1978), 72 Ill. 2d 168, 178.) The court referred to a provision of the Unemployment Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 436) to sustain an award of temporary total compensation during a period after an injury in which the employer did not permit the employee to work, and during which the employee was receiving unemployment compensation; and noted:

"The import of the statute is that the unemployment compensation, to the extent that claimant is eligible for it, will be reduced *by* the amount of *the disability benefits*—not that the *disability benefits will be reduced* or not paid at all. This is not to suggest that claimant should receive a double recovery not permitted by statute. *** A further implication [of *Crow's Hybrid* argument] is that claimant was not really temporarily totally disabled, as the Commission found, because in order to receive unemployment compensation, a worker must be available for, *i.e.*, able to, work. *** First, the statutory provision, *** does not, by implication or otherwise, mutually exclude or find in-

consistent receipt of disability benefits and availability for work." 72 Ill. 2d 168, 178-79.

The same provision is here in effect:

"An individual shall be ineligible for benefits for any week with respect to which he is receiving or has received remuneration in the form of compensation for temporary disability under the Workers' Compensation Act of this State, or under a workers' compensation law of any other State or of the United States. If such remuneration is less than the benefits which would otherwise be due under this Act, he shall be entitled to receive for such week, if otherwise eligible, benefits reduced by the amount of such remuneration." Ill. Rev. Stat. 1981, ch. 48, par. 436.

In *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489, 500-01, the employer contended that the Commission's award for temporary total disability should be abated for a 24-week period when the claimant received unemployment compensation. The court rejected the argument, citing and following *Crow's Hybrid Corn Co. v. Industrial Com.* (1978), 72 Ill. 2d 168.

Ford argues that the cited cases do not apply because the opinions decided only that unemployment compensation is not lost but merely reduced by compensation paid during a layoff period if the employee remains temporarily totally disabled. We conclude, however, that the principles stated in both *Crow's* and *Hunter* support the decision of the Industrial Commission. The fact that the Workers' Compensation Act is not explicitly coordinated with the unemployment compensation statute is a product of the fact that unemployment compensation statutes did not put in their appearance until the 1930's, while workers' compensation statutes have an earlier origin. See Annot., 96 A.L.R.2d 941 (1964).

We do note, however, that the portion of the Commission's decision which orders Ford to repay the Illinois Department of Labor is stricken as unnecessary since the statute (Ill. Rev. Stat. 1981, ch. 48, par. 490(D)) is the source of that requirement, not the action of the Commission.

The decision of the circuit court of Cook County is affirmed.

BARRY, KASSERMAN, McNAMARA, and WEBBER, JJ., concur.